# EXHIBIT A

1  Timothy J. Murphy (State Bar No. 54200)
   Jennifer K. Achtert (State Bar No. 197263)
2  FISHER & PHILLIPS LLP
   One Embarcadero Center, Suite 2340
3  San Francisco, CA 94111-3712
   Telephone: (415) 490-9000
4  Facsimile: (415) 490-9001
   jachtert@laborlawyers.com
5
   Attorneys for Defendant
6  MIRANT CALIFORNIA, LLC

*ORIGINAL FILED*

*AUG 5 2008*

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

7

*E-filing*

8

9          IN THE UNITED STATES DISTRICT COURT

10      FOR THE NORTHERN DISTRICT OF CALIFORNIA

*WHA EDL*

11

12  FRANK RAYMONDE,                    *CV 08*            *3733*
                                       Case No.
13                    Plaintiff,       NOTICE OF REMOVAL

14         v.

15  MIRANT CALIFORNIA, LLC, and Does 1
    through 20, inclusive,
16
                                       Complaint Filed: May 20, 2008
17                    Defendants.      Trial Date: None

18

19                    **NOTICE OF REMOVAL**

20         Pursuant to 28 U.S.C. sections 1441 and 1446, defendant Mirante California, LLC

21  ("Defendant"), by and through its attorneys of record, hereby removes the above-entitled action

22  from the Superior Court of the State of California in and for the County of Contra Costa, to the

23  United States District Court for the Northern District of California, on the following grounds:

24               **PLEADINGS AND PROCEEDINGS TO DATE**

25         1.      On May 20, 2008, a Complaint was filed in the Superior Court of the State of

26  California in and for the County of Contra Costa, entitled *Frank Raymonde v. Mirant*

27  *California, LLC, and Does 1 through 20, inclusive*, and designated as case number C 08-01326.

28  A copy of the Complaint is attached hereto as Exhibit 1.

---

NOTICE OF REMOVAL
SanFrancisco 105764.1                                                                      1

2.      Defendant Mirant California, LLC ("Defendant" or "Mirant") received a copy of the Complaint and Summons on July 17, 2008. This Notice of Removal is timely, being filed within thirty (30) days as required by 28 U.S.C. § 1446(b). A copy of the Summons, along with other materials received by Defendant, is attached hereto as Exhibit 2.

3.      Defendant filed an Answer to the Complaint in the Superior Court of the State of California in and for the County of Contra Costa on August 1, 2008. A copy is attached hereto as Exhibit 3.

4.      Defendant is informed and believes that the aforementioned Complaint, Summons, and Answer of Mirant constitute the entire state court case file in this matter.

5.      The defendants designated Does 1 through 20 are fictitious defendants. (See Complaint ¶ 4 ("fictitious names")). To Defendant's knowledge, they have not been served and thus need not join in the Notice of Removal. *See Salveson v. Western States Bankcard Assoc.*, 731 F.2d 1423, 1429 (9th Cir. 1984) ("Our circuit rule is that a party not served need not be joined; the defendants summoned can remove by themselves.").

## FEDERAL QUESTION JURISDICTION

6.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1331, and is one that may be removed to this Court by Defendant pursuant to 28 U.S.C. Section 1441(b). This action arises under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. Section 185, an act of Congress over which this Court has original jurisdiction pursuant to 28 U.S.C. Section 1331, without regard to the amount in controversy. This action is a suit arising under an act of Congress regulating commerce over which this Court has original jurisdiction pursuant to 28 U.S.C. Section 1337, without regard to the amount in controversy. Because this action is a suit involving claims of a right arising, if at all, under the laws of the United States, it may be removed to this Court under the provisions of 28 U.S.C. Sections 1441(b) and 1446, without regard to the citizenship or residence of the parties.

7.      Removal is based on a claim arising under federal law. Specifically, Plaintiff's claims directly reference and require substantial interpretation and application of the terms of a

1  collective bargaining agreement ("CBA") between an Employer and a Union.  Therefore, the

2  action is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. Section

3  185 ("LMRA").  The wages, hours and terms and conditions of Plaintiff's employment with

4  Mirant are governed by a CBA entered into by and between Mirant and The International

5  Brotherhood of Electrical Workers, Local 1245 ("Local 1245").  Plaintiff's claims are expressly

6  based upon breach of the CBA or upon contractual rights sets forth in the CBA.   By way of

7  specific examples:   The FIFTH CAUSE OF ACTION (BREACH OF CONTRACT)

8  specifically alleges that "Mirant failed and refused to follow the Collective Bargaining

9  Agreement's terms and conditions of employment and prevented plaintiff from resolving his

10  contractual issues of his employment under the CBA ... .  Mirant breached its contract of

11  employment with Plaintiff; to wit, it subjected Plaintiff to actions which violated the contract."

12  (Complaint ¶¶ 66-67).  The SIXTH CAUSE OF ACTION (BREACH OF THE COVENANT

13  OF GOOD FAITH AND FAIR DEALING) specifically alleges that "[i]mplied into Plaintiff's

14  written employment agreement with Defendant Mirant, was a covenant of good faith and fair

15  dealing. ... Mirant breached its duty of good faith and fair dealing towards Plaintiff by unfair

16  interference with Plaintiff's right to the benefits of his contract."  (Complaint ¶¶ 69-70).  The

17  only written contract alleged in the Complaint is the Collective Bargaining Agreement.  The

18  THIRD CAUSE OF ACTION (VIOLATION OF CONSTITUTIONAL RIGHTS: ARTICLE I,

19  SECTION 1 OF THE CONSTITUTION OF THE STATE OF CALIFORNIA) specifically

20  alleges that by "terminating Plaintiff's employment without any just cause ... defendant have

21  [sic] prevented Plaintiff from protecting his property right of employment with Mirant."

22  (Complaint ¶ 54).  To the extent Plaintiff has any alleged property right in employment with

23  Mirant, those rights are contractual and set forth in the CBA.  Article 11, Section 11.1 of the

24  CBA contains a "just cause" discipline, suspension, and discharge requirement.  To determine

25  whether Mirant breached this just cause provision, or any term of the CBA, or denied Plaintiff

26  any contractual rights granted by the CBA necessarily requires analysis, interpretation, and

27  application of the CBA.  Section 301 provides the exclusive remedy for the breach of a CBA

28  and, therefore, for the alleged violations of the CBA that Plaintiff sets forth in his Complaint in

1   this case. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) ("*Lueck*"); *Jimeno v.*

2   *Mobil Oil Corp.*, 66 F.3d 1514, 1522 (9th Cir. 1995).

3       8.    A plaintiff cannot avoid a federal forum by "artfully pleading" solely in terms of

4   state law what is, in essence, a federal claim. *Federal Tax Board of State of Cal. v. Constr.*

5   *Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 22 (1983). Thus, the fact that Plaintiff has not

6   made specific reference to Section 301 of the LMRA does not preclude removal. *Milne*

7   *Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991); *Fristoe v.*

8   *Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980). The Court may properly look

9   beyond the face of the complaint to determine whether the claims asserted do, in fact, raise

10  claims falling within Section 301 of the LMRA. *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857,

11  860-61 (9th Cir. 1987); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir.

12  1987). Additionally, the Court may properly look to the facts stated in the Notice of Removal

13  "to clarify the action a plaintiff presents and to determine if it encompasses an action within

14  federal jurisdiction." *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir.

15  1983).

16      9.    "Congress may so completely pre-empt a particular area that any civil complaint

17  raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins.*

18  *Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). Section 301 preemption operates in this way. An

19  artfully pled state law claim is properly "recharacterized" as a federal claim under the

20  "complete preemption" doctrine, which provides that the preemptive force of Section 301 of

21  the LMRA "converts an ordinary state law complaint into one stating a federal claim for

22  purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar*

23  *Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Franchise Tax Board v. Construction Laborers*

24  *Vacation Trust*, 463 U.S. at 23 ("[I]f a federal cause of action completely preempts a state

25  cause of action, any complaint that comes within the scope of the federal cause of action

26  necessarily 'arises' under federal law"); *Associated Builders & Contractors, Inc. v. Local 302,*

27  *IBEW*, 109 F.3d 1353, 1356 (9th Cir. 1997).

28  / / /

---

10.    Section 301 provides a basis for federal jurisdiction and authorizes federal courts to develop a federal common law of CBA interpretation. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451, 456 (1957); *Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962). To ensure uniform interpretations of collective bargaining agreements, this federal common law preempts the use of state contract law in CBA interpretation and enforcement. *Lucas Flour Co.*, 369 U.S. at 103-04; *Lingle*, 486 U.S. at 411.

11.    To determine whether a state law claim is preempted by Section 301, courts focus on "whether evaluation of [the state law claim] is inextricably intertwined with consideration of the terms of the labor contract." *Lueck*, 471 U.S. at 213. Any state law claim that is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract" is completely preempted by Section 301 of the LMRA. *Lueck*, 471 U.S. at 220; *accord Lingle*, 486 U.S. at 412; *Caterpillar*, 482 U.S. at 394.

12.    Although the language of Section 301 references "suits for violation of contracts," the United States Supreme Court has construed Section 301 "quite broadly to cover most state-law actions that require interpretation of labor agreements." *Associated Builders & Contractors*, 109 F.3d at 1356-57. "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law." *Lueck*, 471 U.S. at 220. Therefore, Section 301 suits that do not assert breach of a CBA "are nevertheless held preempted because they implicate provisions of the agreement." *Associated Builders & Contractors*, 109 F.3d at 1357. Any application of state law is preempted by Section 301 "if such application requires the interpretation of a collective bargaining agreement." *Lingle*, 486 U.S. at 412.

13.    The United States Supreme Court has "construed § 301 of the [LMRA] as not only preempting state law but also authorizing removal of actions that sought relief only under state law." *Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 6-7 (2003) (citing *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968)). This holding rests "on the unusually 'powerful' pre-

1    emptive force of § 301." *Id.*  An action that arises under Section 301 may be removed to

2    federal court even if the plaintiff has pled a claim for relief and sought a remedy available only

3    under state law.

4        14.    At all relevant times, Mirant has been, and is, a limited liability company

5    engaged in commerce and in an industry affecting commerce within the meaning of Sections

6    2(2), 2(6), 2(7) and 301(a) of the LMRA.  29 U.S.C. §§ 152(2), (6), (7); 185(a).  At all relevant

7    times, Mirant has been, and is, engaged in the production and sale of electricity.

8        15.    At all relevant times, the terms and conditions of Plaintiff's employment with

9    Mirant have been governed by a series of collective bargaining agreements entered into

10   between Mirant and Local 1245.  A true and correct copy of the CBA in effect on the date of

11   Plaintiff's termination is attached hereto as Exhibit 4.

12       16.    Local 1245 is, and at all relevant times was, a labor organization in which

13   certain employees of Mirant participate and which exists for the purpose of dealing with

14   employers concerning grievances, labor disputes, wages, rates of pay, hours of employment,

15   and conditions of work.  Local 1245 is the exclusive bargaining representative of a bargaining

16   unit of Mirant employees, which is comprised of all Power Plant Technicians employed at

17   Mirant's Contra Costa, Pittsburg and Potrero Hill Power Plants.  Local 1245 is a labor

18   organization within the meaning of §§ 2(5) and 301(a) of the LMRA.  29 U.S.C. §§ 152(5),

19   185(a). (See Exhibit 4, Article 4, § 4.2).

20       17.    At all relevant times during his employment with Mirant, Plaintiff was

21   employed by Mirant as Power Plant Technician and Assistant Control Operator at Mirant's

22   Pittsburg Power Plant in Pittsburg, California.  (Complaint, ¶¶ 3, 6)  Therefore, Plaintiff is a

23   member of the bargaining unit that is represented by Local 1245 for purposes of collective

24   bargaining. (See Exhibit 4, Article 4, § 4.1).

25       18.    A fundamental policy of federal labor law requires that a labor organization that

26   is "designated or selected for the purposes of collective bargaining by the majority of the

27   employees in a unit appropriate for such purposes shall be the *exclusive representative*[] of all

28   the employees in such unit for the purposes of collective bargaining in respect to rates of pay,

1  wages, hours of employment, or other conditions of employment . . . ." 29 U.S.C. § 159(a)

2  (emphasis added).  This policy of exclusive representation requires that a CBA take precedence

3  over any conflicting individual contract of employment and extinguishes an individual

4  employee's power to order his own relations with his employer.  *J.I. Case Co. v. NLRB*, 321

5  U.S. 332 (1944); *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967).  The exclusive

6  representative has the power to act in the interests of all employees in the bargaining unit.

7  *Lueck*, 388 U.S. at 180.  Plaintiff's allegation that he never received a copy of the CBA

8  (Complaint ¶ 6) is, therefore, unavailing.

9       19.    Based upon the foregoing, this action is properly removed to this Court.

10            **SUPPLEMENTAL JURISDICTION**

11       20.    Mirant submits that Plaintiff's remaining state law claims are also pre-empted

12  by § 301 of the LMRA as resolution of these claims turn on an interpretation or analysis of the

13  terms of a collective bargaining agreement.  However, should the Court find that any claim

14  does not arise under Section 301, the Court may exercise supplemental jurisdiction over all

15  such claims, if any, because they are so related to the federal claims that they form part of the

16  same case or controversy.  28 U.S.C. § 1367(a).

17                  **VENUE**

18       21.    This action is now pending in Superior Court of the State of California, County

19  of Contra Costa, and thus is properly removed to the United States District Court for the

20  Northern District of California pursuant to 28 U.S.C. § 1441(a).

21       22.    Pursuant to 28 U.S.C. §1446(d), promptly after the filing of this Notice of

22  Removal, Defendant will file in the State Court Defendant's Notice of Filing of Notice of

23  Removal with a copy of this Notice of Removal attached thereto.  A copy of Defendant's

24  Notice of Filing of Notice of Removal is attached hereto as Exhibit 5.  Further, Defendant has

25  sent to Plaintiff a copy of this Notice of Removal, and will promptly send to Plaintiff a copy of

26  Defendant's Notice of Filing of Notice of Removal.

27  / / /

28  / / /

---

NOTICE OF REMOVAL
SanFrancisco 105764.1

**INTRA-DISTRICT ASSIGNMENT**

23.     Pursuant to 28 U.S.C. § 1441(a) and Northern District Local Rule 3-2, venue is proper in either the San Francisco Division or the Oakland Division of the United States District Court for the Northern District of California, because Mirant is informed and believes that at least some of the actions that allegedly gave rise to the Complaint occurred in the City of Pittsburg, County of Contra Costa.

24.     This Notice of Removal of Action is executed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

WHEREFORE, Mirant hereby give notice pursuant to 28 U.S.C. § 1446 of the removal of this action, and all the claims therein, from the Superior Court for the State of California, County of Contra Costa, Case Number C 08-01326, to this Court.

In addition, should the Court be inclined to remand this action for any reason, Defendant respectfully requests that the Court issue an order to show cause why the case should not be remanded, giving Defendant (as well as Plaintiff) an opportunity to present proper briefing and argument before any possible remand.   Because a remand order is not subject to appellate review, such a procedure is appropriate.

DATED: August __4__, 2008          FISHER & PHILLIPS LLP


By: _____
Jennifer K. Achtert
Attorneys for Defendant
MIRANT CALIFORNIA, LLC

# EXHIBIT 1

May 20 08 09:43a                                                                    p.2

RECEIVED JUL 1 7 2008

FILED

2000 MAY 20 ' A 10: 34

K. TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CALIF.
BY    J. Myovich

1   DANIEL RAY BACON, STATE BAR # 103866
    Law Offices of Daniel Ray Bacon
2   234 Van Ness Avenue
    San Francisco, CA 94102-4515
3   Telephone (415) 864-0907
    Facsimile: (415) 864-0989
4
    ATTORNEY FOR PLAINTIFF
5   FRANK RAYMONDE
6
7           SUPERIOR COURT OF THE STATE OF CALIFORNIA
8             IN AND FOR THE COUNTY OF CONTRA COSTA
9                      UNLIMITED JURISDICTION
10
11  FRANK RAYMONDE,                    )   CASE NO. C 08 - 0 1 3 2 6
                                       )
12                     Plaintiff,      )   COMPLAINT FOR DAMAGES AND
                                       )   REQUEST FOR JURY TRIAL
13          v.                         )
                                       )
14  MIRANT CALIFORNIA, LLC, and Does 1 )
    through 20, inclusive,             )
15                                     )   BY FAX
                     Defendants.       )
16                                     )   SUMMONS ISSUED
                                       )
17                                     )
                                       )   PER LOCAL RULE 5 THIS
18                                     )   CASE IS ASSIGNED TO
                                       )   DEPT._____
19  _____ )
20
21  COMPLAINT FOR COMPENSATORY DAMAGES AND OTHER RELIEF
22  [REQUEST FOR JURY TRIAL]
23  AGAINST DEFENDANT MIRANT CALIFORNIA, LLC
    [1] VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ON THE
24  BASIS OF AGE [GOVERNMENT CODE SECTION 12940-12941]; [2] VIOLATION OF
    CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ON  THE BASIS OF
25  ASSOCIATION ; [3] VIOLATION OF CONSTITUTIONAL RIGHTS, ARTICLE I, SECTION
    1 OF THE CONSTITUTION OF THE STATE OF CALIFORNIA; [4]WRONGFUL
26  DISCHARGE IN VIOLATION OF CALIFORNIA LABOR CODE SECTION 6310-6312; [5]
    BREACH OF CONTRACT  [6] BREACH OF THE COVENANT OF GOOD FAITH AND
27  FAIR DEALING; [7] VIOLATION OF CALIFORNIA LABOR CODE SECTIONS 1102.5
    (B),(C)&(D); [8]INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; [9] NEGLIGENT
28  INFLICTION OF EMOTIONAL DISTRESS; [10] VIOLATION OF PUBLIC POLICY

    COMPLAINT

Plaintiff alleges as follows:

## I. PARTIES

1. Plaintiff, Frank RAYMONDE, is a citizen of the United States and is now and has been at all times relevant hereto a resident of Contra Costa County, California.

2. Plaintiff is informed and believes and, therefore, alleges on information and belief that Defendant MIRANT CALIFORNIA, LLC is a Limited Liability Corporation duly organized and existing under the laws of the State of California, with its principal place of business in Pittsburg, California.

3. At all times mentioned herein, Defendant MIRANT CALIFORNIA, LLC, operated the Pittsburg Power Plant located at 696 West 10th Street, Pittsburg, California.

4. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1-20, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

5. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants were the agents and employees of the other Defendants and, in doing all the things herein alleged, were acting within the course and scope of such agency and employment and with the permission and consent of their co-defendants.

## III. FACTS COMMON TO ALL CAUSES OF ACTION

6. Plaintiff FRANK RAYMONDE, is a power plant technician who had over fifteen years of experience as a Control Operator/Assistant Control Operator at the time he was hired by Defendant MIRANT CALIFORNIA, LLC ("MIRANT") as an employee allegedly pursuant to a collective bargaining agreement [CBA] which provided that the Defendant employer would not discriminate against its employees based on age, nor subject its employees to any unlawful harassment or actions on any basis prohibited by law. However, Plaintiff was never given any copy of the Collective Bargaining Agreement and was unaware of any procedures relevant to grieving any employment issues. Plaintiff began his employment in Pittsburg, California, with said Defendant on or about June 11, 2001, as a Power Plant Technician [PPT]

COMPLAINT                           - 1 -

at the Pittsburg Power Plant.  The PPT position was later changed to an assistant control operator position and  Plaintiff performed well and continued to hold the position of Assistant Control Operator Position until Plaintiff was locked out of his job on May 11, 2007 by Defendant's agents.

7.  On February 5, 2007 Plaintiff witnessed a dangerous business practice of defendant [unsafe incident] when one of Defendant's employees, Joe Moffat, closed an electrical circuit while Plaintiff was at the breaker.    This was a dangerous practice because Plaintiff was working on the circuit out of Mr. Moffat's view and could have been electrocuted or severely burned.  Defendant is required to cease opening or closing electrical circuits while those circuits are under switching procedures by its employees.    Plaintiff complained to his superiors about the unsafe practice and requested that a "Near Miss Incident Report" be initiated.

8.  On February 5, 2007, Defendant assigned the task of writing the report regarding the incident of February 5, 2007 to Joe Moffat, a clear conflict of interest since said employee is the employee who committed the unsafe practice.

9.  On February 22, 2007, Plaintiff lodged complaints regarding various issues, including the safety issues he had complained of and witnessed on February 5, 2007 as well as other safety incidents and issues he had witnessed, with Plaintiff's  union and Defendant employer and  filed complaints with various government agencies, such as the National Labor Relations Board.

10.  Plaintiff began to receive numerous false allegations made against him stating that he was incompetent and that Plaintiff did not perform his job duties adequately.

11.  On May 11, 2007, Plaintiff was locked out of his job site and his security pass card would not allow plaintiff onto the premises at the Pittsburg Power Plant in Pittsburg, California.  Plaintiff inquired by telephone with David Quezon, the operator on shift at Defendant Company as to why his pass card would not open the gate.  Plaintiff was told that he was not allowed entry, that they could not allow Plaintiff to come to work, and that Plaintiff

COMPLAINT                                    - 2 -

1    would receive certified letters.  Plaintiff returned home and called Plaintiff's lead senior

2    control operator, Joe Zozom, who repeated the same message to Plaintiff.  Plaintiff then left

3    his telephone number with Joe Zozom.

4         12.  On May 12 and 13, 2007, plaintiff complained to OSHA, EDD, and

5    DLSE  regarding the unsafe working conditions at Defendant Company, the failure to pay

6    Plaintiff his wages, and the lockout which prevented Plaintiff from working.

7         13.  At all times herein, Plaintiff was ready, willing , and able to work, but Defendant

8    failed, refused, and prohibited Plaintiff from performing his job duties at the Pittsburg,

9    California facility.

10        14.  On May 17, 2007, Plaintiff received a letter dated May 10, 2007 from Defendant's

11   employee, Alan Johnson, which was sent to an incorrect address, stating that Defendant

12   considered Plaintiff to be resigned from his employment, effective May 17, 2007, and made

13   reference to a May 4, 2007 letter from Defendant to Plaintiff, which was never seen by

14   Plaintiff until provided to Plaintiff's counsel on May 8, 2008 by The California Department of

15   Industrial Relations [DSLE] Retaliation Unit.  A true and correct copy of this May 10, 2007

16   letter is attached hereto as Exhibit One to this complaint.  Plaintiff telephoned Defendant's

17   Atlanta office on May 17, 2007 and spoke with Cathy Brennan, the Human Resources Director

18   of Defendant and informed her that he had been locked out of his job work area, that he was

19   being retaliated against because of his complaints about safety, that he had complained to

20   OSHA regarding the unsafe business practice Plaintiff reported and witnessed on February 5,

21   2007.   Ms. Brennan immediately transferred Plaintiff's call to Lisa Battles, a human resources

22   employee of Defendant, who ignored plaintiff's complaints and told him that he must go to

23   anger management training regarding an incident of which plaintiff was totally unaware.

24        15.  On May 18, 2007, Plaintiff retained counsel and Defendant Mirant was notified by

25   a May 18, 2007 faxed and mailed letter to its Pittsburg site and Atlanta home office from

26   Plaintiff's counsel that Plaintiff had not resigned his job, had no knowledge as to why he was

27   locked out of his job, requested copies of the alleged letter of May 4, 2007, and inquired as to

28

COMPLAINT                              - 3 -

"when Mr. Raymonde will be permitted to return to his job." Defendant did not respond to Plaintiff's counsel's letter. A true and correct copy of Plaintiff's response to Defendant's letter of May 10, 2007 is attached hereto as Exhibit Two-a thru Two-C to this complaint.

16. On May 25, 2007 Plaintiff received a letter by Federal Express from Defendant's employee Alan Johnson which was dated May 25, 2007 and informed Plaintiff that he had been terminated from his employment with Defendant because Plaintiff had "not demonstrated a willingness to contact me to discuss your return to work." Johnson made no reference to the faxed letter Plaintiff's attorney had faxed to him on May 18, 2007. A true and correct copy of this termination letter is attached hereto as Exhibit Three to this complaint.

17. On June 13, 2007, OSHA responded to Plaintiff's complaint of safety in the workplace by writing a letter to Plaintiff which advised Plaintiff that his complaint had been forwarded to DLSE for appropriate action. A true and correct copy of this letter is attached hereto and incorporated herein as Exhibit Four to this complaint.

18. After receiving the termination letter from Defendant, Plaintiff attempted to lodge a grievance against Defendant since there was no just cause to terminate Plaintiff's employment, but the union members did not respond to his initial contacts and in fact informed him that he was locked out and that they could not help him.

19. Plaintiff followed his initial requests to lodge a grievance against his employer by sending a letter dated, June 13, 2007 confirming his earlier requests to grieve the employer's actions and he again informed them that he desired to grieve his illegal removal from his employment.

20. On June 20, 2007 IBEW 1245, Plaintiff's union, acknowledged that Plaintiff had requested a grievance to be filed on his behalf against Defendant Mirant, and IBEW 1245 stated that it would process the grievance on his behalf against Mirant.

21. In early October 2007, Plaintiff received a letter dated October 4, 2007 from IBEW, Local Union 1245 which informed him that the union would not process Plaintiff's grievance of his wrongful termination of his employment. A true and correct copy of this

COMPLAINT                                  - 4 -

1   letter is attached hereto and incorporated herein as Exhibit Five to this complaint.   Plaintiff did

2   not resign his employment and there was no just cause to terminate Plaintiff's employment.

3          22.   During his employment with Defendant MIRANT, Plaintiff was the subject of a

4   continuous pattern of harassment and false allegations  after complaining of the safety

5   violations committed by Defendants, and all actions against Plaintiff were based on and

6   because of his complaints of safety violations in the workplace.

7          23.  Said continuous harassment by Defendant included but was not limited to

8   unwarranted and false allegations, being locked out of his work area, told that he needed to

9   attend anger management courses, being told that he needed a doctor's note to return to work,

10  and being told that he had resigned his employment.  Said actions of defendant continued until

11  plaintiff was terminated under the false allegation that Plaintiff had "not demonstrated a

12  willingness to contact" defendant.

13         24.  Plaintiff's duties at Defendant Mirant included assisting in the operations of

14  boilers, turbo generators and the auxiliary equipment including high voltage switching and

15  water treatment operations.

16         25.  Plaintiff repeatedly complained about the February 5, 2007 safety incident and

17  other safety incidents to his employer by following the Defendant's own written procedures and

18  accompanying forms, submitting switching orders, and maintaining copies of switching orders,

19  but the unsafe practices continued and Plaintiff was then falsely accused of involvement in

20  personnel issues in the workplace which were fabricated, false and defamatory allegations.

21

22                              **FIRST CAUSE OF ACTION**
                 **VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**
23                          **(DISCRIMINATION ON THE BASIS OF AGE)**

24

25         26.  Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 25,

26  inclusive, of this Complaint and makes them a part of this instant cause of action as though

27  fully set forth herein.

28

COMPLAINT                              - 5 -

27. By its conduct as aforesaid, Defendant Mirant discriminated against Plaintiff because of his age in violation of the California Fair Employment and Housing Act, as amended.

28. The California Fair Employment And Housing Act, as amended, makes it an unlawful employment practice for an employer to discriminate against an individual with respect to that individual's compensation, terms or conditions of employment because of such individual's age.   The discrimination based on age inflicted by defendant Mirant  upon plaintiff was in violation of fundamental public policy expressed in Government Code section 12941 [Venuti v Superior Court (1991) 232 Cal. App. 3d 1463) which states in relevant part, "It is an unlawful employment practice for an employer to .. discharge.. any individual over the age of 40 on the ground of age..."  At all times relevant herein, Plaintiff was over the age of 40.  He was terminated due to his age and was replaced by a younger man.  Age discrimination in employment violates fundamental public policy of this State.

29. The conduct of Defendant Mirant, by its termination of Plaintiff,  and  making Plaintiff's workplace environment hostile and accusatory, all as herein above alleged, violated the aforementioned California Fair Employment And Housing Act, as amended, and Plaintiff was damaged thereby.

30. On December 3, 2007, Plaintiff filed a charge of discrimination with the California Department of Fair Employment And Housing ('DFEH') against Defendant Mirant (DFEH Charge No. E200708M0730-00-ac), alleging discrimination, including discrimination because of his age.  A true and correct copy of said charge is attached hereto and incorporated herein as Exhibit Six to this Complaint as though fully set forth herein.

31. On or about December 11, 2007,  the DEFH issued a Notice to Plaintiff of Plaintiff's right to file a private lawsuit on charge No. E200708M0730-00-ac.  A true and correct copy of said Notice is attached hereto and incorporated herein as Exhibit Seven-A to Seven-B to this  Complaint as though fully set forth herein.

32. Defendant Mirant's actions as alleged herein toward Plaintiff are and were as a

COMPLAINT                                     - 6 -

1    result of Plaintiff's age, and constitute employment practices in violation of the California Fair

2    Employment And Housing Act, as amended. By acting as hereinabove alleged, Defendant

3    Mirant followed a course, pattern, practice, and policy of discriminating against Plaintiff and

4    such course, pattern, practice and policy of conduct was known to and carried out by Defendant

5    Mirant under the direction and with the knowledge, consent and permission of its agents and

6    employees. As a result of said practices, Defendant Mirant committed unlawful employment

7    practices against Plaintiff.

8        33. The wrongful conduct of Defendant Mirant, towards Plaintiff as alleged herein was

9    as a result of Plaintiff's age and constitutes unlawful employment practice in violation of the

10   California Fair Employment And Housing Act, as amended.

11       34. As a proximate result of Defendant Mirant's unlawful employment practices,

12   Plaintiff has suffered damages, including but not limited to damages for wage loss and loss of

13   employment benefits, as well as damages for humiliation, embarrassment, mental and

14   emotional distress and discomfort, as well as forcing him to incur attorneys fees, costs and

15   certain other incidental damages, all according to proof.

16       35. At all times herein mentioned, and in acting as alleged herein, Defendant Mirant

17   knew that discrimination based on age was and is illegal and wrongful. Notwithstanding such

18   knowledge, and acting oppressively, maliciously, and fraudulently towards Plaintiff, with a

19   conscious disregard of his civil rights, with the intention of causing or recklessly disregarding

20   the probability of causing injury and emotional distress to Plaintiff, Defendant Mirant refused

21   to cease and desist from subjecting Plaintiff to differential treatment as alleged above.

22   Defendant Mirant's conduct warrants an assessment of punitive damages in a sum according to

23   proof at trial.

24       WHEREFORE, Plaintiff prays for judgment against Defendant Mirant as hereinafter

25   alleged;

26                          **SECOND CAUSE OF ACTION**
                         **(VIOLATION OF THE CALIFORNIA**
27                   **FAIR EMPLOYMENT AND HOUSING ACT)**
                              **(ASSOCIATION)**
28

COMPLAINT                               - 7 -

36. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 35, inclusive, of this Complaint and makes them a part of this instant cause of action as though fully set forth herein.

37. California Government Code Section 12940 makes illegal any action against any individual for associating with any individual who has opposed an unlawful employment practice under California Government Code Section 12940.

38. Plaintiff's association with Eddie Williams, Jr. and Matthew Thompson, African American Men, under the guidelines of the Department of Fair Employment and Housing is a protected activity within the meaning of the anti-retaliation provisions of California Government Code Section 12940.

39. By the actions taken against Plaintiff herein including, but not limited to, locking plaintiff out of his work area, unwarranted and false allegations made against Plaintiff, ludicrous personal charges of violence against the plaintiff, being suspended, being subjected to false, meritless and unfounded accusations of performance issues, being terminated under false allegations that Plaintiff did not respond to his supervisor, after complaining of safety issues, Defendant Mirant has acted against Plaintiff due to his protected right of association.

40. Defendant's termination of Plaintiff was a result of Plaintiff's protected activity in violation of California law, and Defendant's refusal to treat Plaintiff fairly and without retaliatory actions or allow Plaintiff to continue working at the Defendant Mirant is in violation of California law.

41. On December 3, 2007 Plaintiff filed a charge of discrimination with the Department of Fair Employment and Housing against Defendant Mirant alleging that he was harassed, denied employment and locked out of his job, all in violation of the California Government Code 12940 et seq. A true and correct copy of said charge is attached hereto and incorporated herein as Exhibit Six to this Complaint as though fully set forth herein.

42. The Department of Fair Employment and Housing issued a Notice to Plaintiff of his right to file a private lawsuit on charge E200708M0730-00-ac on December 11, 2007, and a

COMPLAINT                                    - 8 -

true and correct copy of said right to sue is attached hereto and incorporated herein as Exhibit Seven-A to Seven-B to this Complaint as though fully set forth herein.

43. As a proximate result of Defendant's unlawful employment practices, Plaintiff has suffered damages due to lost regular wages and lost employment benefits all according to proof. Plaintiff will continue such losses into the future.  Plaintiff further suffered humiliation, embarrassment, mental and emotional distress and discomfort as the proximate result of Defendant's unlawful employment practices, as well as forcing him to incur attorney fees, costs and certain other incidental damages, all according to proof.

44. By its conduct as aforesaid, Defendant Mirant, in harassing Plaintiff, including but not limited to  locking plaintiff out of his work area,  unwarranted and false allegations made against Plaintiff,  ludicrous personal charges of violence against the plaintiff, being suspended, being subjected to false, meritless and unfounded accusations of performance issues, being terminated under false allegations that Plaintiff did not respond to his supervisor, all after complaining of safety issues, has acted in violation of the California Fair Employment and Housing Act ("FEHA"), Government Code Section 12940.

45. Section 12940 of the California Fair Employment And Housing Act, as amended, makes it an unlawful employment practice for any person, because of his association to be treated differently or to be retaliated against and, to be  harassed as an employee.

46. The conduct of Defendant Mirant, in personally making Plaintiff's workplace environment hostile, offensive and abusive on the basis of his association, and to deny Plaintiff his employment, as alleged hereinabove, violated the aforementioned California Fair Employment And Housing Act, as amended, and Plaintiff was damaged thereby.

47.  Plaintiff was locked out of his job, denied employment because of his association with Eddie Williams, Jr. and Matthew Thompson.

48.  Defendant Mirant's actions as alleged herein toward Plaintiff  were as a result of Plaintiff's association, and constitute employment practices in violation of the California Fair Employment And Housing Act, as amended.  By acting as hereinabove alleged, Defendant

COMPLAINT                                    - 9 -

1    Mirant followed a course, pattern, practice, and policy of harassing Plaintiff and such course,

2    pattern, practice and policy of conduct was known to and carried out by Defendant Mirant

3    under the direction and with the knowledge, consent and permission of its agents and

4    employees. As a result of said practices, Defendant Mirant has committed unlawful

5    employment practices against Plaintiff.

6         49. The wrongful conduct of Defendant Mirant towards Plaintiff as alleged herein was

7    a result of Plaintiff's association and constitutes unlawful employment practice in violation of

8    the California Fair Employment And Housing Act.

9         50. As a proximate result of Defendant Mirant's unlawful employment practices,

10   Plaintiff has suffered damages, including but not limited to damages for wage loss and loss of

11   employment benefits, as well as damages for humiliation, embarrassment, mental and

12   emotional distress and discomfort, as well as forcing him to incur attorneys fees, costs and

13   certain other incidental damages, all according to proof.

14        51. At all times herein mentioned, and in acting as alleged herein, Defendant Mirant

15   knew that denying employment and locking plaintiff out of his job due to Plaintiff's association

16   were and are illegal and wrongful. Notwithstanding such knowledge, and acting oppressively,

17   maliciously, and fraudulently towards Plaintiff, with a conscious disregard of his civil rights,

18   with the intention of causing or recklessly disregarding the probability of causing injury and

19   emotional distress to Plaintiff, Defendant Mirant refused to cease and desist from subjecting

20   Plaintiff to discrimination and harassment as alleged above. Defendant Mirant's conduct

21   warrants an assessment of punitive damages in a sum according to proof at trial.

22        WHEREFORE, Plaintiff prays for judgment against Defendant Mirant as hereinafter

23   alleged;

24              **THIRD CAUSE OF ACTION**
     **(VIOLATION OF CONSTITUTIONAL RIGHTS:**
25          **ARTICLE I, SECTION 1 OF THE**
     **CONSTITUTION OF THE STATE OF CALIFORNIA)**
26

27   52. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 51,

28   inclusive, of this Complaint and makes them a part of this instant cause of action as though

COMPLAINT                          - 10 -

1    fully set forth herein.

2        53. Article I, Section 1 of the Constitution of the State of California provides, in

3    pertinent part, that:

4    **"ARTICLE 1 DECLARATION OF RIGHTS SECTION 1.** All people are by nature free and

5    independent and have inalienable rights. Among these are enjoying and defending life and

6    liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety,

7    happiness, and privacy. "

8

9        54. By their conduct alleged hereinabove, Defendant denied Plaintiff the rights

10   guaranteed to him by Section 1, Article I of the Constitution of the State of California by

11   terminating Plaintiff's employment without any just cause. Said actions of defendant have

12   prevented Plaintiff from protecting his property right of employment with Mirant.

13

14       55. As a proximate result of the unlawful employment practices, alleged above, of

15   Defendant Mirant, Plaintiff has suffered damages, including but not limited to damages for

16   wage loss and loss of employment benefits, as well as damages for humiliation,

17   embarrassment, mental and emotional distress and discomfort, as well as forcing him to incur

18   attorneys fees, costs and certain other incidental damages, all according to proof.

19

20       56. At all times herein mentioned, and in acting as alleged herein, Defendants, and

21   each of them, knew that retaliation for complaining of safety and discrimination based on age

22   and association were and are illegal and wrongful. Notwithstanding such knowledge, and

23   acting oppressively, maliciously, and fraudulently towards Plaintiff, with a conscious disregard

24   of his civil rights, with the intention of causing or recklessly disregarding the probability of

25   causing injury and emotional distress to Plaintiff, Defendant Mirant refused to cease and desist

26

27   from subjecting Plaintiff to differential treatment as alleged above. The above alleged conduct

28

COMPLAINT                                      - 11 -

of Defendant Mirant warrants an assessment of punitive damages in a sum according to proof at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as hereinafter alleged;

### FOURTH CAUSE OF ACTION
### (WRONGFUL DISCHARGE)
### (IN VIOLATION OF CALIFORNIA LABOR CODE SECTION 6310)

57. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 56, inclusive, of this Complaint and makes them a part of this instant cause of action as though fully set forth herein.

58. The continuous, illegal conduct of Defendant Mirant as alleged above, in harassing Plaintiff, including but not limited to locking plaintiff out of his work area, unwarranted and false allegations made against Plaintiff, ludicrous personal charges of violence against the plaintiff, being suspended, being subjected to false, merit-less and unfounded accusations of performance issues, being terminated under false allegations that Plaintiff did not respond to his supervisor, all after complaining of safety issues, and other retaliatory conduct by Defendant Mirant, all based on and because of his complaints of safety and other working conditions, violate California Labor Code Section 6310.

59. Defendant Mirant discharged Plaintiff because Mirant feared that Plaintiff had complained to OSHA regarding Mirant's safety violations at its Pittsburg plant or Mirant feared that Plaintiff would complain in the future of safety violations at Mirant's Pittsburg plant per *Lujan v. Minager* (2004) 124 Cal. App. 4th 1040, 1046.

59. Defendant Mirant's actions were in violation of California Labor Code Section 6310.

COMPLAINT                                    - 12 -

60. Defendant Mirant violated California Labor Code Section 6310 by its conduct as alleged herein, such as locking plaintiff out of his employment, terminating plaintiff under the false allegation that he failed to respond to Mirant's correspondence. Plaintiff responded the day after receiving correspondence from Defendant, but Defendant ignored Plaintiff's response and falsely stated that Plaintiff did not respond.

61. By its conduct alleged above, such as locking Plaintiff out of his work area and terminating plaintiff from Defendant Mirant due to his complaints of safety, Defendant Mirant violated Labor Code Section 6310.

62. The continuous illegal conduct of Defendant Mirant as alleged above, caused Plaintiff to be discharged from his employment and Plaintiff has been unable to be employed at Mirant due to Defendant's actions of terminating Plaintiff's employment after it learned that Plaintiff had complained to OSHA.   Plaintiff is permitted to seek damages against Defendant Mirant for the Labor Code violations in this civil action under the California Labor Code Private Attorneys General Act of 2004 at California Labor Code Section 2698 et seq.

63. As a proximate result of the continuous unlawful employment practices, alleged above, of Defendant Mirant, Plaintiff has suffered damages, including but not limited to damages for wage loss and loss of employment benefits, as well as damages for humiliation, embarrassment, mental and emotional distress and discomfort, as well as forcing him to incur attorneys fees, costs and certain other incidental damages, all according to proof.

64. At all times herein mentioned, and in acting as alleged herein, Defendant Mirant knew that terminating plaintiff's employment due to his complaints of safety issues at work, such as his complaint lodged to OSHA on May 12, 2007 was and is illegal and wrongful. Notwithstanding such knowledge, and acting oppressively, maliciously, and fraudulently

COMPLAINT                                         - 13 -

towards Plaintiff, with a conscious disregard of his civil rights, with the intention of causing or

recklessly disregarding the probability of causing injury and emotional distress to Plaintiff,

Defendant Mirant refused to cease and desist from subjecting Plaintiff to wrongful treatment as

alleged above.  The above alleged conduct of Defendant Mirant warrants an assessment of

punitive damages in a sum according to proof at trial.

WHEREFORE PLAINTIFF PRAYS FOR DAMAGES AS HEREINAFTER

ALLEGED

## FIFTH CAUSE OF ACTION
## (BREACH OF CONTRACT)

65.  Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 64,

inclusive, of this Complaint and makes them a part of this instant cause of action as though

fully set forth herein.

66.  The written contract of employment entered into between Plaintiff and Defendant

Mirant  includes the provisions of Section 1, Article I of the Constitution of the State of

California,  the California Fair Employment and Housing Act, as amended, and California

Labor Code Sections 1102.5 (b),(c)&(d); 6310, and all personnel policies and procedures of

Defendant Mirant [which include a prohibition of locking out employees].  Defendant Mirant

failed and refused to follow the Collective Bargaining Agreement's terms and conditions of

employment and prevented plaintiff from resolving his contractual issues of his employment

under the CBA by locking plaintiff out of his job work area and denying him access to the

ability to request a union steward and discuss and resolve the issues of his employment.

67.  By its conduct hereinabove alleged, Defendant Mirant breached its contract of

employment with Plaintiff; to wit, it subjected Plaintiff to actions which violated the contract,

COMPLAINT                              - 14 -

such as locking plaintiff out of his work area, unwarranted and false allegations made against

Plaintiff, ludicrous personal charges of violence against the plaintiff, being suspended, being

subjected to false, merit-less and unfounded accusations of performance issues, being

terminated under false allegations that Plaintiff did not respond to his supervisor, all

after complaining of safety issues. All of this conduct constitutes a breach of the above-said

contractual terms. As a proximate result of the aforesaid breach by Defendant Mirant of its

contract with Plaintiff, Plaintiff has been damaged in a sum according to proof at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant Mirant as hereinafter

follows;

## SIXTH CAUSE OF ACTION
### (BREACH OF THE COVENANT OF GOOD
### FAITH AND FAIR DEALING)

68. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 67,

inclusive, of this Complaint and makes them a part of this instant cause of action as though

fully set forth herein.

69. Implied by law into Plaintiff's written employment agreement with Defendant

Mirant, was a covenant of good faith and fair dealing by which said Defendant promised to

refrain from any act that would prevent or impede Plaintiff's enjoyment of the fruits of said

contract. Specifically, said Covenant of Good Faith and Fair Dealing required Defendant

Mirant to fairly, honestly, and reasonably perform the terms and conditions of the said

agreement.

70. By its conduct hereinabove alleged, Defendant Mirant breached its duty of good

faith and fair dealing towards Plaintiff by unfair interference with Plaintiff's right to the

benefits of his contract.

COMPLAINT                            - 15 -

71. As a proximate result of Defendant Mirant's breach of the covenant of good faith and fair dealing, Plaintiff has suffered substantial losses of employment contractual benefits, including but not limited to lost wages and other employment benefits, all according to proof at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth;

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF LABOR CODE SECTION 1102.5 (b)(c)&(d )

72. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 71, inclusive, of this Complaint and makes them a part of this instant cause of action as though fully set forth herein.

73. During his employment with Defendant Mirant Plaintiff complained about safety issues to his employer, to his union, and to governmental agencies such as OSHA. After his lockout, the Plaintiff informed his employer on May 17, 2007 that he had complained to OSHA about the unsafe working conditions.    On May 25, 2007, Plaintiff was terminated under false allegations that he had failed to respond to Defendant Mirant's correspondence, when in fact, Plaintiff had responded the next day, May 18, 2007 by a faxed and mailed letter to both Mirant's supervisor in Pittsburg as well as to Mirant's headquarters in Atlanta, Georgia. [Exhibit Two-A thru Two-C]

74. The provisions of California Labor Code Section 1102.5 (b), (c) and (d), prohibit an employer from retaliating against an employee because they have disclosed information to a government or law enforcement agency where the employee has reasonable cause to believe that the information discloses a violation of state or federal law, and where an employee refuses to participate in an activity that would result in a violation of state or federal law. Plaintiff

COMPLAINT                              - 16 -

disclosed information to OSHA which he believed disclosed a violation of federal and state law and Plaintiff refused to participate in procedures which were dangerous and could cause employees to be injured, all as stated above.   Plaintiff also refused to ignore the violations which Defendant Mirant ignored in its business operations and plaintiff refused to participate in any illegal unsafe operation of the Mirant Plant at Pittsburg.

75.   As a direct result of Plaintiff's disclosures and refusal to participate in illegal maintenance and operations of Defendant Mirant and as a result of the aforementioned conduct, plaintiff was retaliated against and locked out of his job on May 11, 2007 and terminated from his employment with said Defendant on May 25, 2007. As a result of same, Plaintiff claims damages including emotional distress, lost wages and other employment benefits, all according to proof at trial.   Plaintiff is permitted to seek damages against Defendant Mirant for the Labor Code violations in this civil action under the California Labor Code Private Attorneys General Act of 2004 at California Labor Code Section 2698 et seq.

WHEREFORE, Plaintiff prays for judgment against Defendant Mirant as hereinafter set forth;

## EIGHTH CAUSE OF ACTION
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

76.  Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 75, inclusive, of this Complaint and makes them a part of this instant cause of action as though fully set forth herein.

77.  The wrongful conduct of Defendant Mirant, as aforesaid, was outrageous under all community standards and was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional distress.

COMPLAINT                              - 17 -

78. As a proximate result of the aforementioned outrageous conduct of Defendants Mirant, Plaintiff suffered humiliation, mental anguish, and emotional distress and was injured in an amount according to proof at trial.

79. At all times herein mentioned, and in acting as alleged here, Defendant Mirant knew that its acts constituted oppression, fraud or malice or a conscious disregard of the rights of Plaintiff. Defendant Mirant so acted intentionally without regard to and harming Plaintiff, who is accordingly entitled to an appropriate award assessing punitive or exemplary damages against said Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendant Mirant as hereinafter alleged;

## NINTH CAUSE OF ACTION
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

80. Plaintiffs hereby adopts and incorporates by reference paragraphs 1 through 79, inclusive, of this Complaint and make them a part of the instant cause of action as though fully set forth herein.

81. When Defendants and each of them acted as aforementioned, it was foreseeable that their actions would cause serious emotional distress to Plaintiff. Defendant Mirant had a duty to use reasonable care toward Plaintiff in its actions since it knew that acting in the manner it did towards plaintiff would cause damage to Plaintiff. Notwithstanding their knowledge of same, or the fact that they should have known that such a result would probably occur, Defendants and each of them continued in their course of wrongful conduct as alleged herein.

82. The above-said acts of Defendants, and each of them, constituted a negligent

COMPLAINT                              - 18 -

infliction of emotional distress on Plaintiff herein. Plaintiff suffered mental and emotional distress, and upset, all as a proximate result of Defendants conduct, as alleged above. As a result of same, Plaintiff claims damages according to proof at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as hereinafter set forth;

## TENTH CAUSE OF ACTION
## (VIOLATION OF PUBLIC POLICY)

83. Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 82, inclusive, of this Complaint and makes them a part of this instant cause of action as though fully set forth herein.

84. In wrongfully locking plaintiff out of his work area, in terminating Plaintiff because of his age, and in retaliating against Plaintiff when he complained of safety issues and other issues as hereinabove alleged, Defendant Mirant acted in violation of public policy as expressed in Article I, Section I of the Constitution of the State of California, the California Fair Employment And Housing Act and California Labor Code Sections 1102.5 (b),(c)(&(d); and 6310. In illegally operating its plant with safety violations and in terminating plaintiff after he complained of said safety issues to governmental agencies, Defendant Mirant acted in violation of public policy as expressed in Labor Code Sections 1102.5 (b), (c)&(d) and 6310 and *Lujan v. Minager* (2004) 124 Cal. App. 4th 1040, 1046. As a proximate result of said actions by said Defendants, Plaintiff was damaged in a sum according to proof at trial.

85. At all times herein mentioned, and in acting as alleged herein, Defendant Mirant knew that its acts constituted oppression, fraud or malice or a conscious disregard of the rights of Plaintiff. Defendant Mirant so acted intentionally without regard to and harming Plaintiff,

COMPLAINT                          - 19 -

who is accordingly entitled to an appropriate award assessing punitive or exemplary damages against said Defendants, and each of them.

WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them as hereinafter set forth;

86.  Plaintiff herein demands a trial by jury of the above matters.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For general and special damages according to proof as to all causes of action

2. For damages of $10,000.00 pursuant to California Labor Code Section

   1102.5(f);

2. For exemplary and punitive damages according to proof;

3. For reasonable attorney fees (pursuant to the California Government Section

   12965(b);  California Labor Code Sections 218.5; 2699(g)(1) ; and California Code of

   Civil Procedure Section 1021.5);

4. For all costs of suit herein incurred;

5. For such other and further relief as the Court may deem proper.

                            LAW OFFICES OF  DANIEL RAY BACON

Dated: May 19, 2008

                            DANIEL RAY BACON
                            Attorney For Plaintiff
                            FRANK RAYMONDE

COMPLAINT                            - 20 -

696 West 10ᵗʰ Str.   O Box 192, Pittsburg C
T 925 427 3500  F 925 427 3518  U www...



CERTIFIED MAIL
FEDERAL EXPRESS DELIVERY

May 10, 2007

Mr. Frank Raymonde
554 North Civic Drive, Apt. C
Walnut Creek, CA  94596

Frank,

Last week I sent you a letter dated May 4, 2007 that outlined your current work status.
In that letter I instructed you to contact me immediately with a proper phone number so
I can reach you.  I have not heard from you since you left work on May 3, 2007.

I was informed by the crew that they believed you had resigned your job, based on
your comments when you were leaving work last Thursday.  Therefore, if I don't hear
from you by May 17, 2007 we'll consider this your resignation.

I'm sending two copies of this letter via different delivery methods to ensure you
receive it.  If you receive two copies of this letter you understand why.

I expect to hear from you soon.

Sincerely,

Alan Johnson
Operating Supervisor
Office (925) 427-3549
Cell (925) 324-3549

*Exhibit one*

234 VAN NESS AVENUE
SAN FRANCISCO, CALIFORNIA 94102-4515

TELEPHONE
(415) 864-0907

FACSIMILE
(415) 864-0989

EMAIL: bacondr@aol.com

May 18, 2007

VIA U. S. MAIL AND FACSIMILE: (925) 427-3518

Alan Johnson
Operating Supervisor
Mirant Delta, LLC
696 West 10th Street
P.O. Box 192
Pittsburg, CA 94565

RE: Frank Raymonde

Dear Mr. Johnson:

Please be advised that I have been retained by Frank Raymonde regarding his
employment issues and the specific issues surrounding his recent lock-out from his job site by
your company on May 11, 2007.  Mr. Raymonde is in receipt of your letter dated May 10, 2007.
However, you reference a letter dated May 4, 2007 which allegedly outlined Mr. Raymonde's
"current work status." Mr. Raymonde has never received such a letter and has no knowledge of
your instructions to contact him immediately with a proper phone number.  Therefore, please
fax a copy of this May 4, 2007 letter to my office as soon as possible so we may ascertain what
you are referring to when you talk about his current work status.  By the way his home address is
126 Park Lake Cir. Apartment D, Walnut Creek, CA 94590-5204 and his current telephone
number is 925 952-4059 and he informs me that you have this number.

Mr. Raymonde has not resigned his position and has no intention of resigning his
position with Mirant Delta LLC.  In fact,  when Mr. Raymonde was locked out from accessing
his job site on May 11, 2007 he called Dave Quezon in the control room and asked to be
admitted immediately and that his lockout be corrected.  Mr. Quezon replied that they were
instructed not to allow Mr. Raymonde access to his job site.  Mr. Raymonde had scheduled days
off from May 4 through May 10, 2007.  When he attempted to return to his job on May 11, 2007
his access card denied him entry and this lock-out was confirmed by Mr. Quezon.

Please advise me at your earliest convenience when Mr. Raymonde will be permitted to
return to his job and please provide copies of this letter of May 4, 2007 which Mr. Raymonde
has not received.

*Exhibit two-A*

Alan Johnson
May 18, 2007, Page 2

Thank you for your anticipated cooperation in this matter.

Very truly yours,

DANIEL RAY BACON

DRB:db
cc: Kathy Brennan, Human Resources
    Mirant Corporation
    1155 Perimter Center West
    Atlanta, GA 30338

*Exhibit Two-B*

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT         │
└─────────────────────────────────────────┘
                                    TIME  : 05/18/2007 14:21
                                    NAME  : DANIEL BACON
                                    FAX   : 4158640989
                                    TEL   : 4158640987
                                    SER.# : BROG5J314847
```

```
     DATE,TIME           05/18  14:20
     FAX NO./NAME        19254273518
     DURATION            00:00:34
     PAGE(S)             02
     RESULT              OK
     MODE                STANDARD
                         ECM
```

LAW OFFICES OF

**DANIEL RAY BACON**

234 VAN NESS AVENUE

SAN FRANCISCO, CALIFORNIA 94102-4515

TELEPHONE
(415) 864-0907

FACSIMILE
(415) 864-0989

EMAIL: bacondr@not.com

May 18, 2007

VIA U. S. MAIL AND FACSIMILE: (925) 427-3518

Alan Johnson
Operating Supervisor
Mirant Delta, LLC
696 West 10th Street
P.O. Box 192
Pittsburg, CA 94565

RE: Frank Raymonde

*Exhibit Two-C*

Dear Mr. Johnson:

     Please be advised that I have been retained by Frank Raymonde regarding his employment issues and the specific issues surrounding his recent lock-out from his job site by your company on May 11, 2007. Mr. Raymonde is in receipt of your letter dated May 10, 2007. However, you reference a letter dated May 4, 2007 which allegedly outlined Mr. Raymonde's "current work status." Mr. Raymonde has never received such a letter and has no knowledge of

**Mirant California, LLC**
696 West 10th Street, PO Box 192, Pittsburg, CA 94565
T 925 427 3500  F 925 427 3518  U www.mirant.com



May 25, 2007

Mr. Frank Raymonde
126 D Park Lake Circle
Walnut Creek, CA  94598

Mr. Raymonde,

In the letter sent you dated May 10, 2007, which you signed for, you were instructed to contact me regarding your return to work.  Upon further investigation you were instructed by members of the crew that in order for you to return to the plant, you needed to contact me or Bill Greaves, Plant Manager.  You did call Atlanta Human Resources on May 17, 2007, however, you have yet to still contact me to discuss your return to work.

Based upon the fact that you have not demonstrated a willingness to contact me to discuss your return to work, your employment is being terminated effective today.  On Friday, May 25, 2007, You will be receiving a FedEx delivery at the address you gave Lisa Battles with your final pay.  Your final paycheck includes 36 hours straight time pay (the hours you would have worked this week), 132 hours of unused vacation, one floating holiday and 50 hours of your 2008 accrued vacation.  We have been paying you as if you had not stopped working per our last instructions to you before you left work on Thursday, May 3, 2007.  Therefore, you will also receive your normal direct deposit pay for the prior two-week pay period on Friday, May 25, 2007.

Respectfully,

*Alan Johnson*

Alan Johnson
Operations Supervisor

Cc:  Lisa Battles
     Bill Greaves

EXHIBIT 3 Three

**U.S. Department of Labor**

Occupational Safety and Health Administration
San Francisco Federal Building
90 7th Street, Suite 18-100
San Francisco, California 94103



Reply to the Attention of:

JUN 1 8 2007

Mr. Frank Raymonde
126-D Park Lake Circle
Walnut Creek, CA 94598

RE:  Referral

Dear Mr. Raymonde:

We received your letter regarding your discrimination complaint against your employer, Mirant Corporation.  Your letter has been forwarded for appropriate action to DLSE at the following address:

> Mr. Robert Jones
> Division of Labor Standards & Enforcement (DLSE)
> 455 Golden Gate Avenue, 9th floor
> P.O. Box 420603
> San Francisco, CA 94102

Thank you for your interest in occupational safety and health.

Sincerely,

for Alan Traenkner, Director
Analysis and Evaluation

*Exhibit* ~~Three~~ Four

INTERNATIO ..L BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO

# IBEW  LOCAL UNION 124

30 ORANGE TREE CIRCLE
VACAVILLE, CA 95687
P.O. BOX 2547, VACAVILLE, CA 95696

TOM DALZELL, BUSINESS MANAGER
MICHAEL DAVIS, PRESIDENT

(707) 452-2
FAX (707) 452-2

VIA ~~REGULAR~~ MAIL
*Certified*

September 14, 2007
*Resent 10/4/07*

Mr. Frank Raymonde
~~126-D Park Lake Circle~~ *PO Box 31485*
Walnut Creek, California 94598

     Re: <u>Grievance Filed on Termination</u>

Dear Mr. Raymonde:

Regrettably IBEW Local Union 1245 is forced to agree with Mirant's decision to terminate your employment. This determination is made based strictly on the language of Article 21.3 of the Collective Bargaining Agreement between IBEW 1245 and Mirant, California LLP. The relevant language is as follows:

    "21.3 Formal Grievances must be asserted and filed within ten (10) working days of when the grieving party knew or should have known of the alleged violation, or else they are barred."

Local 1245 reviewed all the information you provided. We did so in a committee fashion to assure a complete review of all relevant information, including recognition that you were off work suspended at the time of your termination. But the contract language above is clear. Your letter to Local 1245 informing us of your termination is dated June 13, 2007 and was received by us on June 19th. In the letter, you state that you received your termination letter from Company on May 25, 2007. This is well beyond the 10-day limit. In accordance with the negotiated grievance procedure, Union is precluded from making any other arguments on your behalf.

Enclosed please find other relevant documents.

In Solidarity,

Hunter Stern
Business Representative

*Exhibit Five*



# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH #  E200708M0730-00-ac

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)
Mr. Frank Raymonde

TELEPHONE NUMBER (INCLUDE AREA CODE)
(925) 952-4059

ADDRESS
P.O. Box 31485

CITY/STATE/ZIP
Walnut Creek  CA  94598

COUNTY
Contra Costa Co.

COUNTY CODE

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
Mirant California, LLC

TELEPHONE NUMBER (Include Area Code)
(925) 427-3530

ADDRESS
696 West 10th Street

DFEH USE ONLY

CITY/STATE/ZIP
Pittsburg, CA  94565

COUNTY
Contra Costa Co.

COUNTY CODE

NO. OF EMPLOYEES/MEMBERS (if known)
100

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year)

RESPONDENT CODE

THE PARTICULARS ARE:

On  May 11th, 2007  I was

- fired
- laid off
- demoted
- ✓ harassed
- genetic characteristics testing
- forced to quit

- ✓ denied employment
- denied promotion
- denied transfer
- denied accommodation
- impermissible non-job-related inquiry
- ✓ other (specify)  LOCKED-OUT

- denied family or medical leave
- denied pregnancy leave
- denied equal pay
- denied right to wear pants
- denied pregnancy accommodation

by  Alan Johnson, supervisor

Name of Person          Job Title (supervisor/manager/personnel director/etc.)

because of my:

- ✓ sex
- ✓ age
- religion
- race/color

- national origin/ancestry
- marital status
- sexual orientation
- ✓ association

- physical disability
- mental disability

- cancer
- genetic characteristic

- other (specify)

(Circle one) filing:
Protesting; participating in; investigation (retaliation for)

the reason given by  Alan Johnson, supervisor

Name of Person and Job Title

Was because of
[please state
what you believe
to be reason(s)]

No reason given.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated  Nov. 28, 2007

COMPLAINANT'S SIGNATURE

At  Walnut Creek, California
City

DATE FILED:

**RECEIVED**

DEC 03 2007

Department of Fair
Employment and Housing
Oakland District Office

Exhibit Six

STATE OF CALIFORNIA

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

ARNOLD SCHWARZENEGGER, Governor

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
1515 Clay Street, Suite 701, Oakland, CA 94612
(510) 622-2941 TTY (800) 700-2320 Fax (510) 622-2951
www.dfeh.ca.gov



December 11, 2007


Daniel Ray Bacon
Attorney

234 Van Ness Ave
San Francisco, CA 94102

RE:    E200708M0730-00-ac
       RAYMONDE/MIRANT CALIFORNIA, LLC

Dear Daniel Ray Bacon:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
December 3, 2007 because an immediate right-to-sue notice was requested.
DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice.  According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the
Fair Employment and Housing Act against the person, employer, labor organization
or employment agency named in the above-referenced complaint.  The civil action
must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment
Opportunity Commission (EEOC) must be visited to file a complaint within 30 days
of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged
discriminatory act, whichever is earlier.

*Exhibit Seven-A*

Notice of Case Closure
Page Two

DFEH does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

Allan H. Pederson
District Administrator

cc:    Case File

*Exhibit Seven - B*

Alan Johnson
Supervisor
MIRANT CALIFORNIA, LLC
696 West 10th St
Pittsburg, CA  94565

# EXHIBIT 2

May 20 08 09:42a

RECEIVED JUL 1 7 2008

p.2

## SUMMONS
### (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MIRANT CALIFORNIA, LLC, AND DOES 1 THROUGH 20,
INCLUSIVE,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FRANK RAYMONDE,



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED**

2008 MAY 20  A 10: 34

K. TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA CALIF.
BY:_____ J. Myovich

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:Contra Costa County Superior Ct.<br>*(El nombre y dirección de la corte es):*<br>725 Court Street<br><br>Martinez, CA 94583 | CASE NUMBER:<br>*(Número del Caso):*<br>**08-01326** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
DANIEL RAY BACON, ESQ.          415 864-0907
234 VAN NESS AVENUE     TEL: 415 864-0907
San Francisco, CA 941022-4515                           J. Myovich

DATE:
*(Fecha)*  **MAY 2 0 2008**          Clerk, by _____, Deputy
                                        *(Secretario)*                    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

⊕EB

Page 1 of 1

Code of Civil Procedure §§ 412.20, 485

SUPERIOR COURT - MARTINEZ
COUNTY OF CONTRA COSTA
MARTINEZ, CA, 94553

RAYMONDE VS MIRANT CALIFORNIA

NOTICE OF CASE MANAGEMENT CONFERENCE                  CIVMSC08-01326

1.  NOTICE: THE CASE MANAGEMENT CONFERENCE HAS BEEN SCHEDULED FOR:

DATE:  10/07/08       DEPT:  16       TIME:   8:30

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION
SHEET, A BLANK CASE MANAGEMENT CONFERENCE QUESTIONNAIRE, AND A BLANK
STIPULATION FORM ARE TO BE SERVED ON OPPOSING PARTIES.  ALL PARTIES
SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT OR THEIR ATTORNEY
OF RECORD MUST APPEAR.

2.  You may stipulate to an earlier Case Management Conference.  If
all parties agree to an early Case Management Conference, please
contact the Court Clerk's Office at (925)957-5794 for Unlimited Civil
cases and (925)957-5791 for Limited Civil cases for assignment of an
earlier date.

3.  You must be familiar with the case and be fully prepared to par-
ticipate effectively in the Case Management Conference and to discuss
the suitability of this case for the EASE Program, private mediation,
binding or non-binding arbitration, and/or use of a Special Master.

4.  At any Case Management Conference the court may make pretrial
orders including the following:

     a.  an order establishing a discovery schedule
     b.  an order referring the case to arbitration
     c.  an order transferring the case to limited jurisdiction
     d.  an order dismissing fictitious defendants
     e.  an order scheduling exchange of expert witness information
     f.  an order setting subsequent conference and the trial date
     g.  an order consolidating cases
     h.  an order severing trial of cross-complaints or bifurcating
         issues
     i.  an order determining when demurrers and motions will be filed

                            SANCTIONS
If you do not file the Case Management Conference Questionnaire or
attend the Case Management Conference or participate effectively in
the Conference, the court may impose sanctions (including dismissal of
the case and payment of money).

     Clerk of the Superior Court of Contra Costa County
I declare under penalty of perjury that I am not a party to this
action, and that I delivered or mailed a copy of this notice to the
person representing the plaintiff/cross-complainant.

Dated:  05/20/08          _____
                                J. MYOVICH, Deputy Clerk

Superior Court of California, County of Contra Costa

## NOTICE TO PLAINTIFFS
In Unlimited Jurisdiction Civil Actions

### AFTER YOU FILE YOUR COURT CASE:

1. Have the forms the clerk gives you served on <u>all</u> defendants in this case:
   a. The Complaint
   b. The Summons
   c. The Notice of Case Management Conference (shows hearing date and time)
   d. The Notice to Defendants  (Local Court Form CV-655d)
   e. Blank: Case Management Statement (Judicial Council Form CM-110)
   f. Blank: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days  (Local Court Form CV-655b)
   g. Alternative Dispute Resolution (ADR) Information (Local Court Form CV-655c)

2. Within 60 days of the date you filed the complaint you **must prove that the forms have been served on (delivered to) the defendants correctly** by filing the ***Proof of Service*** form (POS-010) (completed by the person who did the service) with the court.

3. **Go to the case management conference on the date indicated on** <u>The Notice of Case Management Conference.</u>

4. **Consider using mediation, arbitration, or neutral case evaluation (ADR) to resolve the dispute.** All parties must answer questions about ADR on the *Case Management Statement* form. For more information, see the enclosed ADR information, visit *www.cc-courts.org/adr* , or call (925) 957-5787.

5. **You may delay the first case management conference while you try to resolve the dispute in ADR.**  If all parties agree to use ADR, complete and file the <u>Stipulation and Order to Attend ADR and Continue First Case Management Conference 90 Days</u> form to tell the court you want to use this option.

All civil actions *(except juvenile, probate, family, unlawful detainer, extraordinary writ, and asset forfeiture[1])* and personal injury cases where a party is claiming damages[2] must meet the Civil Trial Delay Reduction time limits for filing documents and moving their cases forward. These time limits are listed in California Rule of Court 3.110 and Local Court Rule 5. If parties miss these deadlines, a judge might issue an order (*Order to Show Cause*) for them to explain in court why they should not have to pay a fine or have their case dismissed.

**VIEW LOCAL COURT RULES AT: (WWW.CC-COURTS.ORG/RULES)**

---

[1] *Health and Safety Code §11470 et seq.*
[2] *Including claims for emotional distress and/or wrongful death.*

CV-655a/Rev. 07/25/2007

## Superior Court of California, County of Contra Costa

# NOTICE TO DEFENDANTS
### In Unlimited Jurisdiction Civil Actions

**YOU ARE BEING SUED.** The packet you have been served should contain:

- a.     The Summons
- b.     The Complaint
- c.     The Notice of Case Management (shows hearing date and time)
- d.     Blank: Case Management Statement (Judicial Council Form CM-110)
- e.     Blank: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days (Local Court Form CV-655b)
- f.     Alternative Dispute Resolution (ADR) Information  (Local Court Form CV-655c)

---

 ## WHAT DO I DO NOW? 

### You must:

1. **Prepare your response**     YOU COULD LOSE YOUR CASE—even before it is heard by a judge or before you can defend yourself, if you do not prepare and file a response on time. See the other side of this page for types of responses you can prepare.

2. **Complete the** *Case Management  Statement  (CM-110)*

3. **File and serve your court papers on time**     Once your court forms are complete, you <u>must</u> file 1 original and 2 copies of the forms at court. An adult who is NOT involved in your case must serve one set of forms on the Plaintiff. If you were served in person you must file your response in 30 days. If the server left a copy of the papers with an adult living at your home or an adult in charge at your work or you received a copy by mail you must file your response in 40 days.

4. **Prove you served your court papers on time**     by having your server complete a *Proof of Service, (Judicial Council form POS-040)*, that <u>must</u> be filed at the court within <u>60</u> days.

5. **Go to court on the date and time given in the** *Notice of Case Management Conference.*

6. **Consider trying to settle your case before trial**     If you and the other party to the case can agree to use mediation, arbitration or neutral case evaluation, the *Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days* can be filed with your other papers. For more information read the enclosed ADR information, visit www.cc-courts.org/adr, or call (925) 957-5787.

**IMPORTANT!** The court recommends consulting an attorney for all or part of your case. While you may represent yourself, lawsuits can be complicated, and the court cannot give you legal advice.

---

**COURT FEES:** You must pay court fees the first time you file your papers.  If you also file a motion, you must pay another fee.  If you cannot afford the fees, you may ask the court to waive (allow you not to pay) fees. Use Judicial Council forms FW-001-INFO [information sheet]; FW-001 [application]; and FW-003 [order].

**COURT FORMS:** Buy forms at the Forms Window in the Family Law Building or download them for free at:
www.courtinfo.ca.gov/forms/

## WHAT KIND OF RESPONSES CAN I FILE?

1. If you disagree with some or all of what the plaintiff says in the complaint because you believe, or know it is not true, you can file an ANSWER.
2. If you have a claim in the same case against the plaintiff, you may file a CROSS-COMPLAINT.
3. If you want to ask the court to do something on your behalf, you may file a MOTION (See TYPES OF MOTIONS below)

## HOW DO I PREPARE AN ANSWER?

There are two kinds of Answers you can use, depending on whether the Complaint was verified. You can tell if a Complaint is verified because it says "Verified Complaint" and/or has a signed oath on the last page.

**For complaints that are NOT verified:**

Use Judicial Council form PLD-050 – General Denial

**For complaints that ARE verified:**

    a. For personal injury, property damage, and wrongful death claims, use Judicial Council PLD-PI-003 (do not check number 2).

    b. For contract claims, use Judicial Council PLD-C-010 (do not check number 3a).

    c. Be sure to deny every claim with which you disagree. For example, you might write: *"I believe, or know, that the information in paragraph #__ is untrue/incorrect."* Continue your list until you have addressed each paragraph in the Complaint.

NOTE: The Judicial Council Answer forms have spaces for your affirmative defenses. Be sure to include them or you may not be able to use them later. To find out what your affirmative defenses might be, go to the law library and ask the librarian to help you find the information you need.

If you want to file a Cross-Complaint, you must do so at the same time you file the Answer.

    a. For a personal injury, property damage, and/or wrongful death Cross-Complaint, use Judicial Council form PLD-PI-002.

    b. For a contract Cross-Complaint, use Judicial Council PLD-C-001.

## TYPES OF MOTIONS

Written motions are documents that ask the court to do something. You may have to file an *Answer* at the same time. At this point in the case, you can only make Motions from the following list:

1. Demurrer *(the facts stated in the complaint are wrong, or the deadline to file the lawsuit has passed);*
2. Motion to Strike *(the complaint is unclear; does not follow the law, "doesn't matter", etc.);*
3. Motion to Transfer *(the complaint is in the wrong court or there's a more appropriate court);*
4. Motion to Quash Service of Summons *(you were not legally served);*
5. Motion to Stay *(put the case on hold); or*
6. Motion to Dismiss *(stops the case).*

    NOTE: Motions are very complicated and you may want to hire a lawyer to help you.

## WHERE CAN I GET MORE HELP?

- Lawyer Referral Service:   (925) 825-5700
- Bay Area Legal Aid:   (800) 551-5554
- Contra Costa County Law Library    Martinez: (925) 646- 2783    Richmond: (510) 374-3019
- Ask the Law Librarian:    www.247ref.org/portal/access_law3.cfm

SUPERI..  COURT OF THE STATE OF CAL  JRNIA
IN AND FOR THE COUNTY OF CONTRA COSTA

_____

_____
                    Plaintiff(s)
        vs.

_____

_____  _*Stipulation and Order* to Attend ADR and Delay_
                    Defendant(s)  _First Case Management Conference 90 Days_

Case No.:_____  Date complaint filed: _____  First case management conference set for: _____

> ▸ ALL PARTIES MUST SIGN THIS FORM AND FILE THIS STIPULATION, WITH CASE MANAGEMENT STATEMENTS,
>   AT LEAST 15 DAYS BEFORE THE FIRST CASE MANAGEMENT CONFERENCE
> ▸ PARTIES MUST ALSO SEND A COPY OF THE FORM WITH THE JUDGE'S SIGNATURE TO THE ADR OFFICE:
>   FAX: (925) 957-5689 or MAIL: P.O. BOX 911, MARTINEZ, CA 94553
> ▸ THIS STIPULATION MAY NOT BE USED IN COMPLEX LITIGATION CASES

**Counsel and all parties certify they have met and conferred on the subjects set forth in Rule of Court
212(b), and have selected the following alternative dispute resolution (ADR) process: [check ☑one]:**

❑ Judicial mediation       ❑ Judicial arbitration       ❑ Neutral case evaluation
❑ Private mediation        ❑ Private arbitration

COUNSEL AND ALL PARTIES AGREE TO COMPLETE ADR WITHIN 90 DAYS, AND CERTIFY:
1.  This is not a complex civil case (as described in California Rules of Court, Rule 3.400);
2.  All parties have been served and intend to submit to the jurisdiction of the court;
3.  All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
4.  Defendant(s)' first appearance fee has been paid or will be submitted with this Stipulation;
5.  Copies of this Stipulation and self-addressed stamped envelopes are provided for returning file-stamped
    copies to counsel and the parties;
6.  Case Management Conference Statements are submitted with this Stipulation;
7.  All parties will attend ADR conferences as required by local court rule (Appendix C); and,
8.  All parties know the court will not allow more than 90 days to complete ADR.

_____|_____     _____|_____
Counsel for Plaintiff *(print)*     Fax     Counsel for Defendant *(print)*     Fax

_____                _____
Signature                           Signature

_____|_____     _____|_____
Counsel for Plaintiff *(print)*     Fax     Counsel for Defendant *(print)*     Fax

_____                _____
Signature                           Signature

> Pursuant to the Stipulation of the parties, and subject to the *Case Management Order* to be filed, **IT IS SO ORDERED** that
> the Case Management Conference set for _____ is vacated and rescheduled for _____ at
> (8:30 a.m. / _____) Plaintiff's counsel must notify all parties of the case management conference.
>
> Dated: _____     _____
>                                          *Judge of the Superior Court*

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | **CM-110** |
|---|---|
| | FOR COURT USE ONLY |

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | | CASE NUMBER: |
|---|---|---|
| (Check one):  ☐ UNLIMITED CASE (Amount demanded exceeds $25,000) | ☐ LIMITED CASE (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:              Dept.:          Div.:          Room:

Address of court (if different from the address above):

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint    *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]            **CASE MANAGEMENT STATEMENT**            Page 1 of 4
Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF/PETITIONER: | | CM-110 |
|---|---|---|
| DEFENDANT/RESPONDENT: | CASE NUMBER: | |

4. b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request  ☐ a jury trial  ☐ a nonjury trial  *(if more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐  The trial has been set for *(date):*
b.  ☐  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐  days *(specify number):*
b.  ☐  hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial  ☐ by the attorney or party listed in the caption  ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  Fax number:
f.  E-mail address:
g.  Party represented:
☐  Additional representation is described in Attachment 8.

9.  **Preference**
☐  This case is entitled to preference *(specify code section):*

10.  **Alternative Dispute Resolution (ADR)**
a.  Counsel  ☐ has  ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b.  ☐  All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c.  ☐  The case has gone to an ADR process *(indicate status):*

| | CM-110 |
|---|---|
| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply):*
- (1) ☐ Mediation
- (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
- (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
- (4) ☐ Binding judicial arbitration
- (5) ☐ Binding private arbitration
- (6) ☐ Neutral case evaluation
- (7) ☐ Other *(specify):*

e.    ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f.    ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g.    ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**
☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**
a.    ☐ Insurance carrier, if any, for party filing this statement *(name):*
b.    Reservation of rights:    ☐ Yes    ☐ No
c.    ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
☐ Bankruptcy    ☐ Other *(specify):*
Status:

**14. Related cases, consolidation, and coordination**
a.    ☐ There are companion, underlying, or related cases.
   (1) Name of case:
   (2) Name of court:
   (3) Case number:
   (4) Status:
☐ Additional cases are described in Attachment 14a.
b.    ☐ A motion to    ☐ consolidate    ☐ coordinate    will be filed by *(name party):*

**15. Bifurcation**
☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**
☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

| | | CM-110 |
|---|---|---|
| PLAINTIFF/PETITIONER: | CASE NUMBER: | |
| DEFENDANT/RESPONDENT: | | |

**17. Discovery**

    a. ☐ The party or parties have completed all discovery.

    b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| | | |

    c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**

    Previous case management orders in this case are *(check one)*:  ☐ none  ☐ attached as Attachment 21.

**22.** Total number of pages attached *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: _____

_____      ▶ _____
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY)

_____      ▶ _____
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY)

    ☐ Additional signatures are attached

CM-110 [Rev. January 1, 2007]          **CASE MANAGEMENT STATEMENT**          Page 4 of 4



## CONTRA COSTA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

All judges in the Civil Trial Delay Reduction Program agree that parties should consider using Alternative Dispute Resolution (ADR) to settle their cases. To tell the court you will use ADR:

- Choose ADR on the *Case Management Form (CM-110);*
- File a *Stipulation and Order to Attend ADR and Continue First Case Management Conference 90-Days* (local court form); or
- Agree to ADR at your first court appearance.

*Questions? Call (925) 957-5787, or go to www.cc-courts.org/adr*

## MEDIATION

Mediation is often faster and less expensive than going to trial. Mediators help people who have a dispute talk about ways they can settle their case. Parties call or visit the ADR Programs office to get a list of mediators. After parties have agreed on a mediator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the mediator at least 5 court days before mediation starts.

ALL parties and attorneys must go to mediation. Mediation can be held whenever and wherever the parties and the mediator want, as long as they finish before the court deadline. In some kinds of court cases, parties have the chance to mediate in the courthouse on their trial day.

Most mediators begin by talking with the parties together, helping them focus on the important issues. The mediator may also meet with each party alone. Mediators often ask parties for their ideas about how to settle the case. Some mediators tell the parties how much money they think a case is worth, or tell them what they think might happen if the case went to trial. Other mediators help the parties decide these things for themselves. No matter what approach a mediator takes, decisions about settling a case can only be made when all the parties agree.

If the parties go through the court ADR program, mediators do not charge fees for the first half hour spent scheduling or preparing for mediation. They also do not charge fees for the first two hours of mediation. If parties need more time, they must pay that person's regular fees. Some mediators ask for a deposit before mediation starts. Mediators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the mediation. A party whose court fees have been waived (cancelled) may ask if their mediation fees or deposit can be waived.

If parties agree about how they will settle their case, they can choose to keep it private, write it up as a contract, or ask the judge to make it a court order. What parties say and agree to in mediation is confidential (private).

## PRIVATE MEDIATION

Private mediation works in the same way as judicial mediation, but the parties do not go through the ADR Programs office. Parties choose a mediator on their own, and pay the mediator's normal fees.

## JUDICIAL ARBITRATION (non-binding)

In judicial arbitration, an independent attorney (arbitrator) looks at the evidence, listens to the parties and their witnesses, and decides how the case will be settled. Judicial arbitration is less formal than court. Parties call or visit the ADR Programs office to get a list of arbitrators. If they cannot agree on an arbitrator, the court will assign one. The judge can send cases to arbitration if there is less than $50,000 in dispute. The person who started the court case can make sure the case goes to arbitration if they agree to limit the amount they are asking for to $50,000. Parties can also agree they want to use judicial arbitration. The arbitrator must send their decision (award) to the court within 10 days of the last hearing. The award becomes a court judgment unless a party asks the court to review the case within 30 days. Parties must use the ADR 102 form to ask for a new court hearing (called a trial de novo.) Judicial arbitrators charge $150 per case or per day.

## PRIVATE ARBITRATION (non-binding and binding)

Private, non-binding arbitration is the same as judicial arbitration, except that the parties do not go through the ADR Programs office to choose an arbitrator, and the arbitrator's award will not become a judgment of the court unless all parties agree. Parties must pay the arbitrator's normal fees.

Binding arbitration is different from judicial or private non-binding arbitration because the arbitrator's decision is final. Parties give up their right to have a judge review their case later (except for reasons listed in California Code of Civil Procedure, Section 1286.2.) Binding arbitration rules are listed in California Code of Civil Procedure, Sections 1280-1288.8. Parties may also agree any time before the judge has made a decision that ends the case to switch to binding arbitration. Parties choose the arbitrator on their own, and must pay the arbitrator's normal (not $150) fees.

## SETTLEMENT MENTOR CONFERENCE

Settlement mentors are independent, experienced trial attorneys that a judge has assigned to help parties look for ways to settle their case. The conference is free and is held in the courthouse. It is often held on the morning of trial, but it can be scheduled anytime. These conferences usually last two or three hours. Parties do not present evidence and do not call witnesses. Parties can ask the settlement mentor to keep some information confidential (private) from the other party, but not from the judge. The settlement mentor can share any information with the judge, or involve the judge in settlement discussions. All principals, clients, and claims representatives must attend the settlement mentor conference.

## NEUTRAL CASE EVALUATION

In neutral case evaluation, an independent attorney (evaluator) reviews documents and listens to each party's side of the case. The evaluator then tells the parties what they think could happen if the case went to trial. Many people use the evaluator's opinion to reach an agreement on their own, or use this information later in mediation or arbitration to settle their case.

Parties call or visit the ADR Programs office to get a list of evaluators. After parties have agreed on an evaluator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the evaluator at least 5 court days before evaluation starts. ALL parties and their attorneys must go to neutral case evaluation. The evaluation can be held whenever and wherever the parties and the evaluator want, as long as they finish before the court deadline. If the parties go through the court's ADR program, evaluators do not charge any fees for the first half hour spent scheduling or preparing for the evaluation conference. They also do not charge fees for the first two hours of the evaluation. If parties need more time, they must pay that person's regular fees. Some evaluators ask for a deposit before evaluation starts. Evaluators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the evaluation. A party whose court fees have been waived (cancelled) may ask if their evaluation fees or deposit can be waived.

## TEMPORARY JUDGE

Some parties want a trial, but want to choose who will decide the case and when the trial will take place. Parties can agree on an attorney that they want the court to appoint as a temporary judge for their case. (See Article 6, Section 21 of the State Constitution and Rule 2.830 of the California Rules of Court.) Temporary judges have nearly the same authority as a superior court judge to conduct a trial and make decisions. As long as the parties meet the court deadline, they can schedule the trial at their own and the temporary judge's convenience.

Each of the temporary judges on the court's panel has agreed to serve at no charge for up to 5 court days. If the parties need more time, they must pay that person's regular fees. All parties and their lawyers must attend the trial, and provide a copy of all briefs or other court documents to the temporary judge at least two weeks before the trial. These trials are similar to other civil trials, but are usually held outside the court. The temporary judge's decision can be appealed to the superior court. There is no option for a jury trial. The parties must provide their own court reporter.

## SPECIAL MASTER

A special master is a private lawyer, retired judge, or other expert appointed by the court to help make day-to-day decisions in a court case. The special master's role can vary, but often includes making decisions that help the discovery (information exchange) process go more smoothly. He or she can make decisions about the facts in the case. Special masters can be especially helpful in complex cases. The trial judge defines what the special master can and cannot do in a court order.

Special masters often issue both interim recommendations and a final report to the parties and the court. If a party objects to what the special master decides or reports to the court, that party can ask the judge to review the matter. In general, the parties choose (by stipulation) whom they want the court to appoint as the special master, but there are times (see California Code of Civil Procedure Section 639), when the court may appoint a special master or referee without the parties' agreement. The parties are responsible to pay the special master's regular fees.

## COMMUNITY MEDIATION SERVICES

Mediation Services are available through non-profit community organizations. These low-cost services are provided by trained volunteer mediators. For more information about these programs contact the ADR Program at (925) 957-5787

LAW OFFICES OF
DANIEL RAY BACON
234 VAN NESS AVENUE
SAN FRANCISCO, CALIFORNIA 94102-4515

TELEPHONE
(415) 864-0907

FACSIMILE
(415) 864-0989

EMAIL: bacondr@aol.com

July 11, 2008

RECEIVED JUL 17 2008

VIA CERTIFIED MAIL #70070220000178259440

National Registered Agents, Inc.
1155 Perimeter Center West
Atlanta, Georgia 30338

RE: Raymonde v. Mirant Corporation, dba Pittsburg Power Plant
    Contra Costa County Superior Court

Dear Agents:

    Enclosed is the summons, complaint and other documents regarding the above-referenced case to be served on Mirant California, LLC.

Very truly yours,

DANIEL RAY BACON

DRB:db
Enclosures
cc: Frank Raymonde



U.S. POSTAGE
SAN FRANCISCO, CA
94102
JUL 11 '08
AMOUNT
$6.92
00027685-12

30338

0000

FIRST CLASS

7007 0220 0001 7825 9440

RETURN RECEIPT
REQUESTED

⚖

**DANIEL RAY BACON**
Attorney At Law
234 Van Ness Ave.
San Francisco, CA  94102

National Registered AGents, Inc.
1155 Perimeter Center West
Atlanta, Georgia  30338

# EXHIBIT 3

1  Timothy J. Murphy (State Bar No. 54200)
   Jennifer K. Achtert (State Bar No. 197263)
2  FISHER & PHILLIPS LLP
   One Embarcadero Center, Suite 2340
3  San Francisco, CA 94111-3712
   Telephone: (415) 490-9000
4  Facsimile: (415) 490-9001

5  Attorneys for Defendant
   MIRANT CALIFORNIA, LLC

6

7

8

9          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10             IN AND FOR THE COUNTY OF CONTRA COSTA

11

12  FRANK RAYMONDE,                    Case No.: C 08-01326

13                  Plaintiff,         Assigned for all Purposed to Judge Thomas
                                       Maddock, Department 16
14       v.
                                       **DEFENDANT MIRANT CALIFORNIA,**
15  MIRANT CALIFORNIA, LLC, and Does 1 **LLC'S ANSWER TO PLAINTIFF'S**
    through 20, inclusive,             **UNVERIFIED COMPLAINT FOR**
16                                     **DAMAGES**
                    Defendants.
17                                     Complaint Filed: May 20, 2008
18                                     Trial Date: None

19

20       Defendant MIRANT CALIFORNIA, LLC, ("Defendant"), by and through its counsel,

21  answers plaintiff FRANK RAYMONDE's ("Plaintiff") unverified Complaint as follows:

22                              **GENERAL DENIAL**

23       Pursuant to California Code of Civil Procedure § 431.30, Defendant generally and

24  specifically, denies each and every material allegation contained in the unverified Complaint,

25  and further specifically denies that Plaintiff has suffered any injury, damage or loss of any kind

26  or in any sum or sums whatsoever, by reason of any alleged act(s) or omission(s) of Defendant,

27  or any of its employees, agents or anyone else allegedly acting on its behalf.

28  ///

_____

**DEFENDANT MIRANT CALIFORNIA, LLC'S ANSWER TO COMPLAINT**
SanFrancisco 105768.1

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Failure to Serve)

Plaintiff has failed to serve Defendant as required by California Civil Code of Procedure, including but not limited to sections 413.10 *et seq.*

## SECOND AFFIRMATIVE DEFENSE

### (Insufficient or Defective Service)

Plaintiff's attempt to serve Defendant is defective or insufficient to effectuate service under California Civil Code of Procedure, including but not limited to sections 413.10 *et seq.*

## THIRD AFFIRMATIVE DEFENSE

### (Failure to State A Claim)

The Complaint, and each cause of action stated therein, fails to state facts sufficient to constitute a cause of action against Defendant.

## FOURTH AFFIRMATIVE DEFENSE

### (Equitable Defenses)

The Complaint, and each cause of action stated therein, is barred by the doctrines of waiver and estoppel, unclean hands, laches and/or forfeiture.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Administrative Remedies)

Plaintiff's claims are limited or barred, in whole or in part, by Plaintiff's failure to comply with all statutory, jurisdictional and procedural requirements under applicable law, including the Fair Employment and Housing Act, and failure to exhaust his administrative remedies thereunder.  (Cal. Gov't Code §12965(b)).

## SIXTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

The Complaint, and each purported cause of action therein is barred, in whole or in part, by the applicable statutes of limitations, including, but not limited to, California Government

///

1  Code sections 12960(d) and 12965(b), and California Code of Civil Procedure sections 335.1,

2  340, 337, 339, and 340.

### SEVENTH AFFIRMATIVE DEFENSE

### (Compliance with FEHA)

Plaintiff's claims and/or recovery of damages on his claims are barred, in whole or in part, because Defendant exercised reasonable care to prevent and promptly correct any alleged discriminatory, harassing and/or retaliatory conduct by its employees at all times, and to the extent that Plaintiff unreasonably failed to use Defendant's established complaint procedures. (Cal. Gov't Code §12940 *et seq.*).

### EIGHTH AFFIRMATIVE DEFENSE

### (Lack of Notice)

Plaintiff's claims, or his recovery of damages thereon, are barred, in whole or in part, to the extent that Defendant had no knowledge or notice, constructive or otherwise, of the alleged misconduct or of the unfitness of any employee alleged to have engaged in misconduct, discrimination, or retaliation.

### NINTH AFFIRMATIVE DEFENSE

### (Failure to State A Claim for Punitive Damages)

Plaintiff's claim for punitive damages fails to state facts sufficient to obtain such damages against Defendant. (See Cal. Civil Code § 3294.) To the extent Plaintiff's claims for punitive damages rely upon alleged acts by Defendant's alleged agents purportedly imputed to Defendant, the limitations inherent in general agency principles prohibit such recovery.

### TENTH AFFIRMATIVE DEFENSE

### (Claims Barred by His Own Conduct)

Plaintiff's claims are barred, in whole or in part, due to Plaintiff's own conduct.

### ELEVENTH AFFIRMATIVE DEFENSE

### (Constitutional Defenses to Punitive Damage Claims)

Plaintiff's claims for punitive damages are barred, in whole or in part, by the United States and California Constitutions, because (a) the asserted standard for entitlement to punitive

---

**DEFENDANT MIRANT CALIFORNIA, LLC'S ANSWER TO COMPLAINT**
SanFrancisco 105768.1

3

1  damages is vague and arbitrary and the procedure for the assessment of punitive damages

2  violates Defendant's rights to due process of law, to equal protection of the law, the right to be

3  free from the unlawful taking of property, the right to be free of excessive fines and all other

4  substantive and procedural protections of the Constitutions applicable to punitive damages, (b)

5  such claims discriminate against Defendant on the basis of wealth and because different

6  amounts can be awarded against two or more defendants for the same conduct where those

7  defendants differ only in material wealth, (c) such claims violate the Separation of Powers

8  Doctrine since this Court would be usurping the exclusive power of the legislature to define

9  crimes and establish punishment, and/or (d) such claims operated as an *ex post facto* law in that

10  any such award would effectively be criminalizing conduct after it has occurred and without

11  appropriate advance notice to Defendant that such conduct may subject it to such punishment.

### TWELFTH AFFIRMATIVE DEFENSE

### (Good Faith of Defendant)

14  Plaintiff's claims for punitive damages are barred, in whole or in part, because of

15  Defendant's good faith efforts to comply with the applicable laws.

### THIRTEENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

18  Plaintiff's claims for damages are barred, in whole or in part, to the extent that Plaintiff

19  has failed to exercise reasonable diligence in mitigating his alleged damages, if any, and to the

20  extent of such failure to mitigate, any damages awarded to Plaintiff should be reduced

21  accordingly.

### FOURTEENTH AFFIRMATIVE DEFENSE

### (Exclusive Workers' Compensation Remedy)

24  Plaintiff's claims are barred, in whole or in part, by the exclusive remedy provisions of

25  the Workers' Compensation Act. (Cal. Labor Code §§ 3600, *et seq.*).

26  / / /

27  / / /

28  / / /

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Pre-Existing Cause)

Plaintiff's claims are barred or limited to the extent that Plaintiff suffered any symptoms of mental or emotional distress or injury which is the result of any pre-existing condition or alternative concurrent or subsequent cause, and not the result of any act or omission of Defendant.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Acts of Third Parties)

Plaintiff's injuries or damages, if any, were not proximately caused by the acts of Defendant but, rather, were set in motion by the acts, conduct, and representations of third parties and/or other parties to this lawsuit.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Failure to Follow Procedures)

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff failed to comply with requirements set forth by law or in Defendant's employment policies and procedures.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Legitimate Non-Discriminatory Reasons/Privilege/Good Cause)

The Complaint, and each purported cause of action therein, is barred because all conduct of Defendant affecting the terms and/or conditions of Plaintiff's employment was for legitimate non-discriminatory reason(s), was privileged and/or justified, and was done with good cause. Even if Defendant had considered a prohibited factor in any decision, which Defendant denies, Defendant would have made the same decision in any event for lawful reasons.

## NINTEENTH AFFIRMATIVE DEFENSE

### (Offset for Other Income Received)

Plaintiff's claims for damages are barred to the extent of Plaintiff's actual interim earnings, amounts earnable with reasonable diligence, or other mitigation.

## TWENTIETH AFFIRMATIVE DEFENSE

### (ERISA Preemption)

Plaintiff's recovery of any compensatory or other monetary damages for any alleged loss of fringe benefits, including medical or retirement benefits, is barred, in whole or in part, on the grounds that the exclusive remedy for such alleged damages is the Employee Retirement and Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (No Entitlement to Attorneys' Fees)

Plaintiff's claim for attorneys' fees is barred, in whole or in part, because it violates the rights of Defendant to protection from procedural "due process" and/or "excessive fines" as provided in the United States Constitution, as amended, and in the Constitution of the State of California.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

Plaintiff's claims or recovery of damages pursuant to his Complaint may be barred, in whole or in part, based on the after-acquired evidence doctrine.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Arbitration Agreement)

The Court lacks jurisdiction over the Complaint, and each and every purported cause of action therein, because the Collective Bargaining Agreement between Plaintiff's Union and his Employer that governs the wages, hours, and terms and conditions of Plaintiff's employment contains a valid and enforceable arbitration agreement that covers the claims alleged in the Complaint.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Conduct Beyond the Course and Scope of Employment/Lack of Agency)

If any alleged discriminatory, retaliatory, or other improper conduct occurred, which Defendant denies, Defendant is not liable because (a) any person allegedly engaging in any such conduct was not acting as an employee or agent of Defendant, (b) such conduct was

outside the course, scope, and/or authority of Defendant and/or any employee or agent of Defendant, (c) Defendant was not negligent or reckless with respect to any such conduct, and/or (d) such conduct was expressly contrary to and in disregard for Defendant's interests, rules, policies and/or procedures.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (LMRA Pre-Emption)

Each "CAUSE OF ACTION" pled in the Complaint is pre-empted, in whole or in part, by Section 301 of the Labor-Management Relations Act, 29 U.S.C. section 185 ("LMRA" or "Section 301"), and as such, assert a claim under Section 301 even though Plaintiff fails or omits to expressly reference Section 301.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (LMRA Statute of Limitations)

Each of Plaintiff's claims that is subject to LMRA pre-emption must be dismissed for Plaintiff's failure to assert such claim within the applicable six month statute of limitations for asserting claims under Section 301.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Join a Necessary and Indispensable Party Under California Code of Civil Procedure Section 389)

Each of Plaintiff's claims that is subject to Section 301 of the LMRA must be dismissed pursuant to California Code of Civil Procedure Section 389 for Plaintiff's failure to join The International Brotherhood of Electrical Workers, Local Union No. 1245 (Local 1245"). By the very nature of a Section 301 claim, Local 1245 is a necessary and indispensable party, in whose absence complete, or any, relief cannot be accorded among those already parties.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Defendant's Actions Consistent With Business Necessity)

Defendant's actions were consistent with Business Necessity within the meaning of California Code of Regulations Title 2, § 7286.7(b). Plaintiff's claims under the California Fair Employment and Housing Act, therefore, must be dismissed.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Defendant's Actions Based Upon Reasonable Disciplinary Polices and Procedures)

Defendant's actions were based upon enforcement of reasonable disciplinary policies and procedures and Plaintiff's actions were disruptive or otherwise detrimental to Defendant's legitimate business interests within the meaning of California Code of Regulations Title 2, § 7287.8(b).   Plaintiff's claims under the California Fair Employment and Housing Act, therefore, must be dismissed.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Defendant's Actions Constituted Reasonable, Non-Discriminatory Disciplinary Measures)

Defendant's actions constituted reasonable disciplinary measures that do not discriminate on the basis of age within the meaning of California Code of Regulations Title 2, § 7287.6(d).   Plaintiff's claims under the California Fair Employment and Housing Act, therefore, must be dismissed.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Plaintiff Failed to Perform or Conform to Bona Fide Requirements of Position)

Defendant's actions were based upon Plaintiff's failure to perform the normal functions of his position or failure to conform to the bona fide requirements of his position within the meaning of California Code of Regulations Title 2, § 7296.2(a).  Plaintiff's age discrimination claim under the California Fair Employment and Housing Act, therefore, must be dismissed.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Defendant's Actions Would Have Been Taken Even in the Absence of Any Alleged Protected Activity)

Defendant's actions alleged to constitute adverse employment actions would have been taken for legitimate, independent reasons even if Plaintiff had not engaged in any alleged protected activity.  Plaintiff's claims for retaliation, including those brought under California Labor Code § 1102.5 in his SEVENTH CAUSE OF ACTION, therefore, must be dismissed pursuant to California Labor Code § 1102.6.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Reservation of Rights)

Defendant expressly reserves its right to amend this answer and to assert additional affirmative defenses, and to supplement, alter or change this answer and affirmative defenses upon revelation of more definitive facts by Plaintiff and/or upon Defendant's undertaking of discovery and investigation of this matter. Accordingly, the right to assert additional affirmative defenses, if and to the extent that such affirmative defenses are applicable, is hereby reserved.

WHEREFORE, Defendant Mirant California, LLC, prays that judgment be entered in favor of Defendant and against Plaintiff Frank Raymonde, that Plaintiff take nothing by way of his Complaint against Defendant, and that Defendant be awarded its costs of suit, including reasonable attorneys' fees, and such other relief that this Court may deem appropriate.

DATED: August ___ 2008                    FISHER & PHILLIPS LLP


By: _____
    Jennifer K. Achert
    Attorneys for Defendant
    MIRANT CALIFORNIA, LLC

1

## PROOF OF SERVICE

2    I am a citizen of the United States of America and a resident of Contra Costa County.  I

3  am over 18 years of age and not a party to this action.  My business address is One

4  Embarcadero Center, Suite 2340, San Francisco, CA 94111-3712.  On this date, August 1,

5  2008, I served the within document **DEFENDANT MIRANT CALIFORNIA, LLC'S**

6  **ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT FOR DAMAGES** as follows:

7    ✓    (by mail) on all parties in said action in accordance with Code of Civil Procedure §1013, by placing a
         true and correct copy thereof enclosed in a sealed envelope in a designated area for outgoing mail,
8        addressed as set forth below.  At Fisher & Phillips, mail placed in that designated area is given the
         correct amount of postage and is deposited that same day, in the ordinary course of business, in a United
9        States mailbox in the County of San Francisco, California.

10   _____  (by Federal Express) on all parties in said action by depositing a true and correct copy thereof  in a
         sealed packet for overnight mail delivery, with charges thereon fully paid, in a Federal Express
11       collection box, at San Francisco, California, and addressed as set forth below.

12   _____  (by facsimile transmission) on all parties in said action, by transmitting a true and correct copy thereof
         from our office facsimile machine, (415) 490-9001, to the facsimile machine number(s) shown below.
13       Following transmission, I received a "Transmission Report" from our fax machine indicating that the
         transmission had been transmitted without error.

14   _____  (by hand) on all parties in said action in accordance with Code of Civil Procedure Section 1013.

15

16   | | |
     |---|---|
     | Daniel Ray Bacon | ***Attorneys for Plaintiff*** |
     | Law Offices of Daniel Ray Bacon | |
     | 234 Van Ness Avenue | Telephone:    (415) 864-0907 |
     | San Francisco, CA  94102-4515 | Facsimile:    (415) 864-0989 |

17

18

19    I declare under penalty of perjury under the laws of the State of California that the

20  foregoing is true and correct.  Executed on August 1, 2008, at San Francisco, CA.

21

22                                          *Carol S. Ferrari*

23                                          Carol S. Ferrari

24

25

26

27

28

## PROOF OF SERVICE

# EXHIBIT 4

COLLECTIVE BARGAINING AGREEMENT

BETWEEN

MIRANT CALIFORNIA, LLC

AND

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS
LOCAL 1245

November 1, 2005 thru October 31, 2008

Final Version
January 1, 2006

2

# TABLE OF CONTENTS

| Article | Subject | Page |
|---|---|---|
| | Preamble | 3 |
| 1 | General Purpose of Agreement | 3 |
| 2 | Union Security | 3 |
| 3 | Dues Check Off | 4 |
| 4 | Union Recognition and Work Jurisdiction | 4 |
| 5 | Union Stewards | 5 |
| 6 | Union Representatives and Access | 5 |
| 7 | Notices Between the Union and the Company | 6 |
| 8 | Probationary Employees/Length of Service | 6 |
| 9 | Temporary Employment | 7 |
| 10 | Seniority/Longevity of Service/Layoffs | 8 |
| 11 | Management Rights | 8 |
| 12 | Compensation and Payroll | 9 |
| 13 | Retirement Income and Group Welfare Benefits and Coverage's | 10 |
| 14 | Vacation, Holidays and Paid Leave | 11 |
| 15 | Inter-Plant Transfers | 11 |
| 16 | Hours of Work | 11 |
| 17 | Overtime | 13 |
| 18 | Report Allowance | 14 |
| 19 | Safety | 15 |
| 20 | No Strike – No Lockout | 15 |
| 21 | Grievance and Arbitration Procedure | 16 |
| 22 | No Discrimination | 18 |
| 23 | Savings Clause | 20 |
| 24 | Duration of Agreement | 20 |
| Appendix A | Summary of Benefits | 21 |
| Appendix B | Vacation, Holidays, Sick Leave, Med/Personal Leaves, Personal Time Off, Funeral Leave and Jury Duty | 24 |
| Appendix C | Wage Schedule | 32 |

Final Version
January 1, 2006

3

## PREAMBLE

This Agreement is effective the 1st day of January, 2006 by and between MIRANT CALIFORNIA, LLC located in Pittsburg, California, hereinafter referred to as the "Company" and LOCAL UNION NO. 1245 of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, hereinafter referred to as the "Union."

WITNESSETH:

WHEREAS, it is the intent of the parties to set forth herein their Agreement covering rates of pay, wages, hours of employment and other conditions of employment; to promote efficiency, safety and productivity of employees and to provide for prompt and fair settlement of grievances;

NOW, THEREFORE, the parties do agree as follows:

## ARTICLE 1
## GENERAL PURPOSE OF AGREEMENT

1.1     The parties acknowledge that the California energy market is now deregulated, and one of the objectives of this Agreement is competitive operation in this new market.  The general purpose of this Agreement is to set forth the hours of work, rates of pay, and conditions to be observed by the Company, Union, and employees and to provide orderly and harmonious procedures between the Company, Union, and employees.  It is the further purpose of the Agreement to prevent interruption of work and to promote the efficient operation of business.

1.2     Any reference to gender contained within the provisions of this Agreement is inadvertent and is in no way intended by the parties, and should not be so construed, as making applicable such provisions to any one gender.

## ARTICLE 2
## UNION SECURITY

2.1     Every employee covered by this Agreement shall, not later than thirty (30) calendars days after the commencement of employment, as a condition of employment, tender to the Union: (a) an amount of money equal to the initiation fee uniformly charged by the Union to all employees who become members of the Union, unless the employee has, at any previous time, tendered such an amount of money to the Union; and (b) an amount of money equal to the monthly dues uniformly charged by the Union to all employees who are members of the Union.  Thereafter, such employee shall tender to the Union an amount of money equal to the monthly dues uniformly charged by the Union to all employees who are members of the Union.

2.2     Upon request by Union, and no more often than monthly, Company shall provide Union a list of employees in the bargaining unit.

2.3     Any bargaining unit employee who is temporarily placed in a non-bargaining unit classification shall continue to be subject to the provisions of Section 2.1 above, for the duration of such temporary assignment.  If any employee is temporarily assigned to a supervisory position, he shall not be discriminated against by the Union for performing as the Employer's representative, with the exception of payment of dues, for the duration of the temporary assignment.

2.4     Union recognizes its obligation to inform bargaining unit members of the rights and obligations with respect to union membership. The Company will allow the Union to meet with all new hires, up to thirty minutes paid time, to satisfy this provision.

## ARTICLE 3
## DUES CHECK-OFF

3.1     Company shall deduct from wages and pay over to the proper officers of Union membership dues of any employee as provided for in Section 2.1 above who individually and voluntarily authorizes such deductions in writing.

3.2     The Union shall indemnify the Company and hold it harmless against any and all suits, demands, and liability that may arise out of, or by reason of, any action that shall be taken by the Company for purposes of complying with the foregoing provisions of this Article 3 or in reliance on any authorization or list which shall be furnished to the Company by the Union under any of such provisions.

3.3     If the federal or state government rules that the check off authorization form, or right to terminate the same, as contained in this Agreement, violates federal or state law, then the same shall be considered deleted and the appropriate form and/or authorization shall be substituted in its place.

## ARTICLE 4
## UNION RECOGNITION AND WORK JURISDICTION

4.1     This Agreement shall cover the bargaining unit of Power Plant Technicians employed at the Company's Contra Costa, Pittsburg and Potrero Power Plants (collectively referred to as "the Plants"), and shall exclude all other employees.

4.2     The Company recognizes the Union as the sole bargaining agent for the bargaining unit defined in this Article 4.

4.3    This Agreement shall be binding upon the successors and assigns of the parties hereto and no provisions, terms, or obligations herein contained shall be affected, modified, altered or changed in any respect whatsoever by the consolidation, merger, sale, transfers, or assignments of either party hereto, or by any change geographical or otherwise, in location or place of business of either party hereto. In the event the Company sells or transfers any location, this Agreement shall remain in full force and effect and be binding upon the purchaser or transferee and the Company agrees it will include in the purchase agreement that this Agreement is so binding.

## ARTICLE 5
## UNION STEWARDS

5.1    For the purpose of representation within a facility, the Union shall be entitled to select a reasonable and adequate number of stewards, who shall restrict their activities to the handling of grievances and other legitimate Union business, and who shall be allowed a reasonable amount of time for this purpose.

5.2    Each steward shall be a regular full-time member of the bargaining unit and shall perform the work assigned by the Company.

5.3    Stewards shall not be recognized by the Company until the Union has notified the Company's Human Resources department in writing of the selection.

5.4    Stewards shall not conduct Union business during their regular working hours without obtaining prior approval from a supervisor.

## ARTICLE 6
## UNION REPRESENTATIVES AND ACCESS

6.1    A written list of the Union Business Representatives assigned to service this Agreement shall be furnished to the Company immediately after their designation and the Union shall notify the Company of any changes in the list which occur from time to time.

6.2    Duly authorized Business Representatives of the Union shall be permitted at reasonable times to enter the Plants covered by this Agreement for the purpose of transacting Union business and observing conditions under which employees are employed.

6.3    The Business Representative will coordinate visits with the Plant Manager/O&M Manager or his designee upon entering a facility, and the Business Representative may not unduly interfere with the employees' work at any time.

6.4    Company may make reasonable designation of controlled-access areas.

6.5    All Union business postings will be limited to Company-provided Union bulletin boards.

## ARTICLE 7
## NOTICES BETWEEN THE UNION AND THE COMPANY

7.1    Notices hereunder shall be deemed to have been adequately given if served by certified mail upon the persons named below at the addresses indicated unless otherwise notified in writing.

Notice to the Union shall be addressed to:
IBEW - LOCAL #1245
Attn: Business Manager/Financial Secretary
P. O Box 2547, 95696 (US Mail)
30 Orange Tree Circle, 95687 (FedEx)
Vacaville, CA

Notice to the Company shall be addressed to:
MIRANT CALIFORNIA, LLC
Attn: Human Resources Manager
P. O. Box 192 (US Mail)
696 W. 10th Street (FedEx)
Pittsburg, CA  94565

7.2    Either party may, in its sole discretion, designate in writing any new persons to receive said notices during the life of this Agreement.

## ARTICLE 8
## PROBATIONARY EMPLOYEES/LENGTH OF SERVICE

8.1    All employees covered by this Agreement are deemed probationary from their date of hire through their first 180 continuous calendar days of employment, and during such time may be terminated with or without just cause.

8.2    An employee's length of service shall begin on the employee's first date actually worked including service granted to "Transition Employees" as defined in the Memorandum of Understanding, dated November 1, 2000.  Should two employees begin work on the same day the following process shall be used for determining the employee with the greatest service:  by the last four (4) digits of the employees' social security number, with the lowest number determining the higher seniority

8.3    Employees who leave in good standing and are rehired at a later date will be considered a new hire. "Good standing" means that the employee was not terminated for cause. Any employee terminated for cause is not eligible for rehire at any Company facility.

8.4    Probationary employees are not eligible for certain benefits including holiday pay, vacation, bereavement/funeral pay and personal time off.

## ARTICLE 9
## TEMPORARY EMPLOYMENT

9.1    The Company will provide the Union hiring hall forty-eight (48) hours advance notice of the need to hire a temporary employee for a work schedule in excess of five (5) work days. All temporary employees will be "at will".

9.2    When notifying the Union of the need for a temporary employee, the Company may:,

    (A)    Call employees by name.
    (B)    Send a letter to the Union specifically requesting that the Union not send a particular individual in response to the referral without payment of any type, for a twelve month period.

9.3    The Union will have up to forty-eight (48) hours to refer applicants for employment to the Company.

9.4    The Company retains the right to reject any applicant. Should an applicant be rejected, the applicant will receive four (4) hours' pay at the Minimum Rate set forth in Article 12.

9.5    If the Company rejects all referred applicants or if the Union cannot refer a qualified applicant, the Company may hire an applicant from any source.

9.6    Temporary employees hired under this Article shall be paid no less than the Minimum Rate.

9.7    Should the Company desire to employ an individual on a temporary basis for five (5) consecutive work days or less, the Company need not use the aforementioned hiring hall process contained in this Article, but shall instead be allowed to direct hire.

## ARTICLE 10
## SENIORITY/LONGEVITY OF SERVICE/LAYOFFS

10.1     For purposes of layoff, transfers, and position changes within the bargaining unit, the Company shall select employees on the basis of skills, operational needs and length of service. "Service" means continuous service in the Company's employ and shall include service recognized in Article 8.2, and service shall not be interrupted by authorized time off of one (1) year or less. Unauthorized time off which results in discipline may not be counted for service credit. A termination from employment, voluntary or involuntary, eliminates all service. Notwithstanding the above, former employees who are rehired by the Company within twelve (12) months of their last active date of employment shall have their service bridged.

10.2     Employees shall have the right to be recalled for up to twelve (12) months after a layoff. Recalled employees shall be rehired in the reverse order of layoff, provided such employees are qualified for the vacant positions.

## ARTICLE 11
## MANAGEMENT RIGHTS

11.1     The Company shall at all times, subject to the provisions of this Agreement and the law, retain the sole right to manage its business and direct the working force, including the rights to decide the number and location of plants, the equipment incidental to operation, the products to be manufactured, the method of manufacture, and the scheduling of production; to determine whether and to what extent the work required in its business shall be performed by employees covered by this Agreement; the right to lease or to sublease; the right to expand, sell, subcontract, move, establish new operations, transfer and/or terminate all or part of its operations; the right to establish and/or change hours of work including number of hours worked and/or work schedules; the right to select, hire and layoff employees and/or to determine the size, content, and composition of the required jobs within the Plants, including the right to set job requirements and judge performance; to cross-train employees; to reassign job tasks between employees; to transfer employees and/or work between departments and to eliminate or create new jobs; to determine the levels of productivity, quality and efficiency; the right to discipline, suspend or discharge employees with just cause; the right to change or introduce any new or improved methods, materials, equipment or facilities; the right to promote; the right to determine the methods, techniques and types of work or service to be performed, not performed, or work or service to be subcontracted; and the right to make and enforce reasonable rules and regulations as the Company may consider necessary for the operation of its business. Any right not given to the Union in this Agreement shall remain the sole and exclusive right of the Company. The exercise of management rights in this Article is not subject to Grievance and Arbitration under Article 21.

Formatted: Highlight

Final Version
January 1, 2006

9

11.2    The management right involving the right to determine whether and to what extent the work required in its business shall be performed by the employees covered by this Agreement is not intended to reduce the size of the bargaining unit. Except where the bargaining unit size would be reduced or an employee would suffer a loss in regularly scheduled work hours, management and staff may be used to perform bargaining unit work when necessary to maintain operations, conduct training, provide temporary relief, address temporary staffing shortages, or perform quality inspections or testing.

11.3    The Company may from time to time establish reasonable rules and regulations relating to the maintenance of performance, order, safety, Company issued equipment, attendance and discipline among its employees, together with disciplinary penalties for their enforcement. Such rules shall be posted on the Company bulletin board seven (7) days prior to implementation. Such rules and regulations and any changes established shall be within the sole right of the Company to implement, but they will be reviewed with the Union before posting.

## ARTICLE 12
## COMPENSATION AND PAYROLL

12.1    As of the ratification of this contract and the agreed-to date between the parties, employees will be brought to the target wage rate of their assigned level or a minimum of a 2% base wage increase. It is understood that some employees' base wage rate may exceed the target wage rates and they will, therefore, receive 2% base wage increase(s) on March 1 of 2007 and 2008 until their base wage meets target. Employees at target wage rates will receive a 3% base wage increase on March 1 of 2007 and 2008. The wage rates and escalation table are those set forth in Appendix C.

12.2    Definition of a Lead union position is:  Leads will be selected by management and can be a regular assignment or temporarily assigned to employees working outages or other projects. The Company can assign or unassign employees to the lead position at their discretion. Employees can choose to end their Lead assignment and return to their normal craft classification and pay rate. Leads can direct other bargaining unit employees in assigning work and technical direction. Leads will perform bargaining unit work. If a Lead employee returns to their craft level position, they will be placed at their 2005 wage rate unless that wage rate has progressed to a higher level pursuant to Appendix C.

12.3    There shall be no deductions from employees' pay covered by this Agreement except as provided in this Agreement or as required to:  (1) repay outstanding loans made to an employee; (2) pay for medical premiums: (3) pay for charitable contributions designated by the employee; (4) pay for other deductions authorized by the employee and agreed to by the Company, or those deductions authorized in the manner prescribed by law (e.g., garnishments); and (5) to pay restitution in the event of theft or unauthorized conversion of Company property.

12.4    Wages shall be paid at biweekly intervals on Fridays for a two weeks' payroll period ending no more than ten (10) days prior to the pay date, provided if the regular pay date falls on a holiday payment shall be made on the preceding workday.

12.5    Paid leave under Article 14 shall be at the straight time rate, and shall not include overtime or holiday premiums or shift differentials.

12.6    Regular, full-time employees assigned to a rotating shift will be paid a one dollar ($1.00) hourly premium for all hours worked.  These premiums will be included in the base rate of pay for overtime calculations.  Nonshift employees assigned to work a temporary shift outside their normal work hours for more than 5 consecutive days will also be entitled to the $1.00 hour shift premium.

12.7    The Company reserves the right to award extra pay to any individual bargaining unit employee, or groups of employees, based on performance.  This monetary or non-monetary award, subject to applicable taxes, is not to be considered part of any of the Company's annual incentive pay program.

12.8    In the event of a layoff, the current Company severance plan that is in effect at the time the layoff will occur, will be the plan offered to bargaining unit employees.  The Company will develop a process for selecting employees for layoff and administering the severance procedure.

## ARTICLE 13
## RETIREMENT INCOME AND GROUP WELFARE BENEFITS AND COVERAGES

13.1    The retirement income and group welfare benefit plans which have been negotiated as part of the Agreement will remain in effect for the life of the Agreement, unless changed by mutual agreement.  Except as set forth in Article 8.4, eligibility for and the operation of such plans will be governed by the plan documents.

13.2    The Company will provide benefit plans in which employees shall share the cost of certain benefits (e.g., medical/dental coverage).  A summary of the coverage's and the cost-sharing for such coverage's is set forth in Appendix A.  To the extent provided by law, Company will provide that employee costs will come from pretax income.

13.3    The Company may change carriers or administrators for any benefits covered by this Article in its sole discretion, provided that the Company provides comparable benefits.  "Comparable benefits" does not include the exact same access to particular medical providers or facilities, or investment options. The Company will provide the Union both reasonable advance notice of any such change, and the opportunity to meet and confer prior to making any such change.

## ARTICLE 14
## VACATION, HOLIDAYS AND PAID LEAVE

14.1    When paid or unpaid leave is sought and provided for Vacation, Holidays, Sick Leave, Funeral Leave, Jury and Witness Duty, Military Duty and Personal and Medical Leave, and Kin Care Leave such leave will be provided and governed in accordance with the applicable leave procedure set forth in Appendix B. Based on operating requirements, all leave requests may be subject to management approval.

14.2    Unless otherwise addressed in the Agreement, the employees will be afforded and subject to all other Company Policies and Procedures and benefits provided to other non-exempt Company employees, and which will remain in effect for the term of this Agreement.

## ARTICLE 15
## INTER-PLANT TRANSFERS

15.1    The Company may temporarily transfer or reschedule employees from one plant to the other to meet immediate operational needs or for outages. In such an event, the employee will be reimbursed for reasonable and actual board and lodging, or actual travel time and mileage, which exceeds their normal commute travel time and mileage for each day the employee commutes to the temporary location. Mileage shall be paid at the allowable IRS rate. The Company will make reasonable efforts to accommodate the employee's preference without compromising employee safety.

15.2    Subject to operational needs, employees covered by this Agreement will receive priority consideration for transfers to regular full-time or part-time vacant positions to any facility covered by this Agreement which is not their originating place of work. Employees will be selected for transfers as provided in Article 10. Employees can apply for job opportunities by submitting their request using Mirant's job posting system found on the Company's website.

## ARTICLE 16
## HOURS OF WORK

16.1    The work week shall be seven (7) consecutive calendar days beginning at 6:00 a.m. on Monday and ending at 5:59 a.m. on the following Monday. The work day shall be any period of 24 consecutive hours beginning with the starting time of the employees' scheduled work period.

16.2    Except in cases where the Company adopts an alternative work schedule as noted below in this Article and in Article 16.4, the regular working hours will be 40 hours per week, eight (8) hours per day, not including a meal period of one-half (1/2) hour. Unless otherwise altered by the Company per the terms of this Agreement, non-shift

employees shall work eight (8) hours per day, Monday through Friday, between the hours of 6:00 a.m. and 6:00 p.m.  While it is the intent of the Company to maintain a normal schedule of weekly employment, this statement shall not be considered a guarantee of any minimum hours of work, or as a limitation of the number of hours which the Company may reasonably require an employee to work if the conditions necessitate additional hours of work, or any guarantee as to a specific schedule of work.

     16.3     The Company may, in addition to the schedule noted above, schedule work shifts, in the following configurations:

     (A)     Ten (10) hours per shift for four (4) days within a workweek.

     (B)     Twelve (12) hour shifts for three (3) days within a work week, followed by twelve (12) hour shifts for four (4) days within the next workweek.

     (C )     Nine (9) hours per shift for four (4) days and one day at eight (8) hours per day within a work week, followed by nine (9) hours per shift for four (4) days within a workweek.

     Unless an employee is a Shift Employee as defined in Section 16.5 below, work time shall not include meal periods of one-half (1/2) hour.  This section shall not be construed as a guarantee of hours of work per day or per week, or a guarantee of days of work per week.  The Company will provide at least two (2) week's notice of any change in work schedule, except in situations of operational emergencies.

     16.4     Nothing contained herein shall be construed as preventing the restructuring of the normal work day or work week as deemed reasonable to provide service in the event of work stoppage, failure of utilities to provide electricity, water, or gas for reasons beyond the Company's control failure of the sewer, or interruptions of work caused by acts of God or any other reasons beyond the control of the Company.

     16.5     A Shift employee works a job that is staffed with a rotating twenty-four (24) hour per day shift, on a seven (7) day a week basis, including holidays.  Time to consume meals for shift employees shall be considered as time worked.  Meals will be taken at the work station or as directed by the Supervisor.

     16.6     Absent circumstances as set forth in Section 16.4, the Company shall not require an employee to work more than 16 hours without an 8 hour rest period, provided relief is available.

     16.7     Each employee shall be allowed a ten-minute paid break to be taken at his or her workstation in each half of a workday that equals four or more hours.  Under no circumstance will rest periods become cumulative from day to day.

## ARTICLE 17
## OVERTIME

This section shall not be construed as a guarantee of hours of work per day or per week, or a guarantee of days of work per week.

17.1    Overtime is defined as (a) any time worked outside of one's regular schedule, or (b) any time worked on a paid holiday.

17.2    Overtime rates shall be paid under the following conditions:

(A)    All overtime will be paid at one and one-half times the regular hourly rate of pay with the following exceptions:
- Twice the regular hourly rate of pay will be paid after working 12 consecutive hours.
- Twice the regular hourly rate of pay for all hours worked on a second and fourth day of overtime assigned during the same work week.
- All training assigned outside of regular work hours will be paid at the one and one-half times the hourly rate of pay. Under no circumstances will double time be paid for training.

(B)    Nothing in Article 17 shall prevent the Company from exercising a Home Early Day when operating conditions allow pursuant to the 12-hour shift schedule.

17.3    The Company shall have the right to assign overtime to qualified employees, but will make a good faith attempt to distribute overtime equitably. When operational needs require, employees shall be available to work overtime if requested to do so. If overtime is an extension of the normal work day or occurs during a lunch period, it will normally be assigned to the employee who is doing the particular job at the particular work station needed for overtime operation. All overtime scheduling must have prior approval by the appropriate supervisor.

17.4    No pyramiding of overtime and/or premium pay will be permitted, i.e., there shall not be payment of more than one overtime or premium rate for the same hours of overtime.

17.5    For the purpose of computing overtime pay, only time spent working shall be considered as hours worked. Travel time in connection with overtime work shall be paid at the overtime rate. Vacation, sick leave, funeral, floating holiday and jury duty are considered as time worked.

17.6    Lost time due to general leave, personal business, unexcused absence and lateness shall not be considered as hours worked.  Hours worked on a Company recognized holiday shall be paid in accordance with this Article, in addition to the holiday received.

17.7    All overtime must be authorized by the employee's supervisor or management prior to working overtime hours except in the case of an emergency at which time the overtime may be authorized by the employee's supervisor after the emergency.

17.8    The Company shall furnish an appropriate meal or reimbursement when an employee is working overtime and is prevented from observing the normal meal practice. The meal or reimbursement is due every 5 hours during an overtime period except when the overtime is prearranged for a non-workday where the employee will provide the first meal (typically lunch).  The first meal is due 5 hours following the end of the employee's lunch period or ¼ hour past the end of a 12-hour shift.  Time to consume such meal shall be considered as time worked, and in no event shall exceed one-half hour.  In the event the employee foregoes the meal, the employee will be reimbursed $13.00 and one-half hour pay at the overtime rate for such missed meal.

## ARTICLE 18
## REPORTING ALLOWANCE

18.1    Reporting allowance is time for which an employee is paid, but during which no work is performed.  It is "allowed" as provided in this Article.

18.2    An employee who is scheduled or called out to work, and who reports for work on time, shall be paid not less than two (2) hours at the applicable rate unless the employee has been directed by the Company before the end of the employee's previously scheduled shift or one (1) hour before the beginning of the employee's next scheduled shift not to appear for work.  The Company will contact the employee at the employee's telephone number of record most recently placed on file with the Company.  If there is no work in the occupation for which the employee reported, he may be assigned to other work.

18.3    In the event that work cannot be provided due to work stoppage, failure of utilities to provide electricity, water, or gas for reasons beyond the Company's control, failure of the sewer system, or interruptions of work caused by acts of God or any other reason beyond the control of the Company, the provisions of this Article do not apply.

18.4    When the Company deems it necessary, employees may be provided with electronic pagers in order to be available for operational contingencies or emergencies and for regular call-out obligations.

## ARTICLE 19
## SAFETY

19.1    All employees shall comply with all safety rules and regulations established by the Company.  The Company will issue reasonable safety rules and regulations.

19.2    If an employee has justifiable reason to believe that his safety and health are in danger due to an alleged unsafe conditions, or equipment or unsafe work habits of others, he shall inform his supervisor immediately.  The supervisor shall be responsible for determining what action or equipment, if any, is necessary to make the job safe or the job shall be shut down.  If unsure about the safety criteria the supervisor may involve others in the assessment before rendering the decision.

19.3    The Company and Union will establish a Joint Safety Committee which will meet at least twice each year to discuss safety concerns, new regulations, and accidents. Any recommendation from this Committee will be advisory in nature.

## ARTICLE 20
## NO STRIKE - NO LOCKOUT

20.1    During the term of this Agreement, the Union, its agents, representatives, employees and persons acting in concert with it agree that they shall not incite, encourage, condone or participate in any strike, walkout, slowdown, sit down, stay-in, boycott, sympathy strike, sick-out, picketing, or other work stoppage, handbilling where handbilling may interfere with current or future operations, or any other type of similar interference with respect to the Plants; and it is expressly agreed that any such action is a violation of this Agreement.  Upon receipt of a written notice of a violation to the Union, the Union and its officers shall take immediate action and will use their best efforts to notify any Union officers, members, representatives or employees, or persons acting in concert with them, either individually or collectively, to cease and desist from any violation immediately and to return to work.  Nothing in this Agreement shall be construed to limit or restrict the right to any of the parties to this Agreement to pursue any and all remedies available under law in the event of a violation of this provision.  Any employees inciting, encouraging, or participating in any strike, walkout, slowdown, sit down, stay-in, boycott, sympathy strike, sick-out, picketing, or other work stoppage, handbilling, where handbilling may interfere with current or future operations, or any other type of similar interference with respect to the Plants, or other activity in violation of this Agreement are subject to discipline up to and including discharge.

20.2    In consideration of the foregoing, the Company agrees that it shall not lock out or cause to be locked out any employee covered under the provisions of this Agreement.  The term "lockout" does not refer to the discharge, termination or layoff of employees by the Company, nor does "lockout" include the Company's decision to

terminate or suspend work at either Plant or any portion of either Plant for reasons unrelated to economic pressure on the Union or its members.

20.3     The Parties agree that any dispute under this Article, except employee discharges pursuant to Article 21.1, shall be submitted to the following arbitration procedure:

(A)     The Grieving Party shall submit to an arbitrator designated in subsection (B) below a sworn declaration containing, in reasonable detail, the relevant facts of the events giving rise to the dispute, and alleging a threatened or existing breach of this Article that shall cause or is causing irreparable harm. This declaration shall be simultaneously served on the other Party.

(B)     The declaration required under subsection (A) shall be submitted to the first available arbitrator on the following list to consider the dispute:

| | |
|---|---|
| John Kagel | Chris Knowlton |
| Barbara Chaveny | Claude Ames |
| Ken Silbert | Gerald McKay |
| Barry Winograd | Norman Brand |
| Frank Silver | Jim Madison |

(C)     The arbitrator shall have the authority, pending a full hearing, to issue interim, preliminary, or temporary orders as well as a final and binding decision following a hearing.

(D)     Any interim, temporary, preliminary or final decision or order from the arbitrator, as well as the ability to compel compliance with this procedure shall be enforceable by lawful judicial action by a court of competent jurisdiction.

## ARTICLE 21
## GRIEVANCE AND ARBITRATION PROCEDURE

21.1     Should either party allege a violation of this Agreement, an earnest effort shall be made to settle such matters promptly in accordance with this Grievance and Arbitration Procedure.

21.2     Whenever possible, prior to filing a formal grievance, any employee or his designated Steward, having a complaint under the terms of this Agreement shall explain the matter to his supervisor. The employee may request the supervisor to summon the Steward. An attempt will be made to settle the complaint at this stage.

21.3    Formal Grievances must be asserted and filed within ten (10) working days of when the grieving party knew or should have known of the alleged violation, or else they are barred. The period shall commence to run on the day following the action complained of. In case of disciplinary action, the Shop Steward will be present, if requested by the employee.

21.4    A steward may investigate and attempt to adjust a pending request, complaint or grievance. The Company and Union will determine those employees to be present at any scheduled meetings by and between the Company and the Union during the time the employee's grievance is discussed, provided the meeting(s) do not interfere with operations.

21.5    The Steps of the Grievance Procedure shall be as follows:

(A)    Step One:  When the steward, employee and supervisor have been unable to resolve the complaint, it may be reduced to writing and submitted as a formal grievance by the Business Representative to the Plant Manager and Human Resources Manager, but no later than the ten (10) day time limit set forth in 21.3. The Union and the Company's Human Resources Manager or designee shall discuss the grievance within five (5) working days from the date of receipt of the grievance. Within five (5) working days after the meeting between Company and Union, the Company shall answer in writing to the Union. Within five (5) working days after receipt of the Company's answer, the Union may refer the matter to Step 2.

(B)    Step Two:  In the event the issue is not resolved in Step One, it may be referred by either party to the Review Committee comprised of the Company's Director of Operations and a Union Assistant Business Manager. They shall meet within ten (10) days and have the authority to, interview additional witnesses, send it back for additional information, settle or send to the next step.

(C)    Step Three:  Either party may request the Federal Mediation and Conciliation Service to provide a list of no less than seven (7) qualified arbitrators by separately submitting the request directly to the FMCS. Either party may reject a list in its entirety on one occasion. Within five (5) working days of receipt of such list, the individuals to represent the parties at the arbitration hearing and one other individual appointed by each party shall confer to select an arbitrator by alternatively striking the name from the list until one name remains who shall be the arbitrator. The parties shall flip a coin to determine who strikes the first name.

The date to be set for the arbitration shall be one which is mutually agreed to by and among the arbitrator, the Union and the Company. At this Step, the parties will also attempt to resolve the issue in a manner that is satisfactory to both parties. If an agreeable settlement is not reached, the parties will jointly advise the arbitrator of the following agreed upon steps which s/he is to follow in the rendering of his/her decision:

(1)     The decision of the arbitrator shall be in writing and shall be final and binding upon the parties. The burden of proof for any decision shall be by a preponderance of the evidence.

(2)     Back pay remedies shall be limited to a maximum of no more than ten (10) months retroactive pay, unless it is shown that the Company willfully and deliberately violated the Agreement.

(3)     The arbitrator shall have no power or authority to add to or subtract from or modify in any way the terms and conditions of this Agreement. Where termination is at issue, the Arbitrator shall only have the power to adjudicate the issue of "just cause."

(4)     All fees and expenses of the arbitrator shall be shared equally by the Company and the Union.

21.6     Failure to timely raise, file or appeal any grievance within the time limits set forth above will result in the grievance being waived; provided, however, that the time limits set forth above may be extended by the mutual written agreement of the parties.

21.7     Any grievance affecting the hourly rate of an employee which is settled in favor of the employee shall not be retroactive to a date earlier than sixty (60) calendar days prior to the date the grievance was presented to the Company in writing in Step 1 of this procedure. It is agreed that no grievance shall be valid unless appealed within the time provided herein. Where the grievance has not been appealed as provided herein, it shall be considered settled on the basis of the last answer given by the Company. If the Company fails to respond in accordance with the time limits set forth herein the grievance will be settled as requested by the Union.

## ARTICLE 22
## NO DISCRIMINATION

22.1     The Company shall not discriminate against any employee because of membership in or activity on behalf of the Union. The Union shall not discriminate against, coerce, or intimidate any employee because of non-membership in the Union.

Final Version                                    19
January 1, 2006

22.2    The parties agree that employees are entitled to equal employment opportunity and the parties will not discriminate against qualified employees or applicants by reason of his or her race, creed, religion, color, sex, national origin, age, disability, veteran status, marital status, perceived or actual sexual orientation or citizenship status, as these terms are defined and interpreted under the provisions of the following statutes, as amended: Title VII of the Civil Rights Act of 1964, the California Fair Employment and Housing Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Vietnam Veterans Readjustment Act of 1974, the Family and Medical Leave Act, the California Family Rights Act, the Immigration Reform and Control Act of 1986, and any other applicable federal/state/local laws governing discrimination.

22.3    The Company and the Union agree that no employee should be subjected to unlawful harassment on any basis prohibited by law, including sexual or racial harassment.

22.4    The Union acknowledges its obligation to abide by the laws, regulations and policies which prohibit discrimination, intimidation, or harassment. The Union recognizes that bargaining unit employees must comply with the Company's non-discrimination policy and its policy against harassment. The Union also recognizes that, should the Company determine that an employee is in violation of the non-discrimination or harassment policy, the employee may be subject to disciplinary action up to and including discharge.

22.5    If, pursuant to any court or administrative order or settlement of a lawsuit or charge under any anti-discrimination law, the Company must change or provide terms and conditions of employment inconsistent with this Agreement, the parties agree that said Court order or settlement terms shall supercede the provisions of this Agreement.

22.6    The parties agree that the Company may provide reasonable accommodation to the known physical or mental limitations of an otherwise qualified disabled employee or applicant pursuant to state and/or federal disability laws. The parties agree to meet and confer regarding the accommodation and, if they cannot agree, the Company may implement any reasonable accommodation.

22.7    The Company and the Union agree to comply with the applicable requirements of the Family and Medical Leave Act of 1993 and similar applicable laws when and so long as such laws are in effect. Such actions shall not be considered a violation of any provision of this Agreement, notwithstanding any other provisions of this Agreement, nor shall such actions be used as evidence of precedent or past practice in any subsequent situation.

## ARTICLE 23
## SAVINGS CLAUSE

23.1    In the event any clause or provision of this Agreement is ruled an "unfair labor practice" by the National Labor Relations Board or should become invalid by reason of present or future legislation, regulation, or decision by any court or other tribunal with jurisdiction, the remainder of this Agreement or the application of such provision to other persons or circumstances shall not be affected.  In such event, the parties shall meet within thirty (30) days to negotiate a substitute provision which will, as nearly as possible, reflect the intent of the suspended clause in a lawful manner.  In any event, the No Strike -- No Lockout provisions contained in Article 20 shall remain in effect for the term of this Agreement as to any issue which might be addressed by negotiating commenced pursuant to this Article.

## ARTICLE 24
## DURATION OF AGREEMENT

24.1    This Agreement is executed on November 1, 2005 and it shall remain in full force and effect for three (3) years through October 31, 2008 and from year to year thereafter unless either party serves written notice of their desire to amend, modify or terminate this Agreement at least sixty (60) days prior to the anniversary date.  The Company and the Union may mutually agree to amend or add to any provision of this Agreement during its term, provided that any such amendment or modification must be in writing executed by the duly authorized representatives of each party and any oral modification or amendment shall have no force or effect.

IN WITNESS WHEREOF MIRANT CALIFORNIA, LLC and IBEW LOCAL 1245 have each caused this agreement to be executed in its name and behalf, by its proper officials thereunto duly authorized the year and day first above written.

MIRANT CALIFORNIA, LLC            INTERNATIONAL BROTHERHOOD OF
                                  ELECTRICAL WORKERS, LOCAL 1245

By: _____   By: _____
    Mark Gouveia, Director            Perry Zimmerman, Business Manager
    Of Operations
Date: _____   Date: _____

                                  By: _____
                                      Michael Davis, President
                                  Date: _____

                                  By: _____
                                      Hunter Stern, Business Representative
                                  Date : _____

Final Version                     21
January 1, 2006

# EXHIBIT 5

1 | Timothy J. Murphy (State Bar No. 54200)
Jennifer K. Achtert (State Bar No. 197263)
2 | FISHER & PHILLIPS LLP
One Embarcadero Center, Suite 2340
3 | San Francisco, CA 94111-3712
Telephone: (415) 490-9000
4 | Facsimile: (415) 490-9001

5 | Attorneys for Defendant
MIRANT CALIFORNIA, LLC

6

7

8

9 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 | IN AND FOR THE COUNTY OF CONTRA COSTA

11

| | |
|---|---|
| 12 FRANK RAYMONDE, | Case No.: C 08-01326 |
| 13 Plaintiff, | Assigned for all Purposed to Judge Thomas Maddock, Department 16 |
| 14 v. | **DEFENDANT'S NOTICE OF FILING OF NOTICE OF REMOVAL** |
| 15 MIRANT CALIFORNIA, LLC, and Does 1 through 20, inclusive, | |
| 16 | |
| 17 Defendants. | |
| 18 | Complaint Filed: May 20, 2008 Trial Date: None |

19

20 | TO THE CLERK OF THE SUPERIOR COURT OF CONTRA COSTA COUNTY

21 | PLEASE TAKE NOTICE that Defendant MIRANT CALIFORNIA, LLC, by and

22 | through undersigned counsel, has filed a Notice of Removal of Civil Action, a copy of which is

23 | attached hereto as Exhibit 1, in the United States District Court for the Northern District of

24 | California.

25 | / / /

26 | / / /

27 | / / /

28 | / / /

---

**DEFENDANT'S NOTICE OF FILING OF NOTICE OF REMOVAL**                                    1
SanFrancisco 105765.1

1   Pursuant to 28 U.S.C. §1446(d), no further proceedings may be held in this Court unless

2   and until the case is remanded.

3

4   DATED:_____          FISHER & PHILLIPS LLP

5

6                                   By:_____

7                                      Jennifer K. Achtert
                                       Attorneys for Defendant
8                                      MIRANT CALIFORNIA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28